PEACE v. McADOO, Police Com'r.

(Supreme Court, Special Term, Kings County. February 4, 1905.)

1. HIGHWAYS—CONTROL—RIGHTS OF LEGISLATURE.
    Though the State Legislature has control of the highways of the state, it cannot cause a highway to be wholly or partially closed without providing compensation to abutting owners.

2. SAME—ABUTTING OWNERS—RIGHTS.
    The property rights of abutting owners in a highway are not merely to use the same for ingress and egress, but include the right to have the highway open as a thoroughfare to the whole community for purposes of travel, convenience, publicity, and trade.

3. SAME—ORDERS OF POLICE COMMISSIONER—JURISDICTION.
    Under Greater New York Charter, Laws 1901, p. 28, c. 466, § 50, vesting the control of the streets in the city of New York in the board of aldermen, the police commissioner of the city of New York had no jurisdiction to promulgate an ordinance closing certain parts of public streets within the city to the general use of vehicles, and to enforce the same by mounted policemen.

4. SAME—POWER TO REGULATE.
    Greater New York Charter, Laws 1901, p. 136, c. 466, § 315, authorizing the police force of the city to "regulate the number of teams and vehicles in streets, bridges, squares, parks and public places," only authorizes the temporary regulation of traffic in the streets according to the moment and

emergency, and does not empower the police commissioner to prohibit the use of certain parts of streets to vehicles.

Suit by Ahi Peace against William McAdoo, police commissioner of the city of New York, to restrain defendant from carrying into effect a general ordinance or order made by him prohibiting the general use of parts of certain streets to vehicles. Judgment for plaintiff.

On the return of an order to show cause for a permanent injunction, counsel for defendant served a demurrer to the complaint that it does not state facts sufficient, and consented that that issue be tried at the same time.

The plaintiff is not an abutting owner on any of the streets affected, but is prevented by the police from driving on the closed streets.

Sanders Shanks, for plaintiff.
James D. Bell, for defendant.

GAYNOR, J. The defendant has enacted a law or ordinance which closes certain parts of streets in Brooklyn Borough to the general use of vehicles, and is enforcing it by a large number of policemen on horseback. When analyzed it will be found that this ordinance entirely excludes vehicles from the streets in Borough Hall Square, unless to "load or unload goods or passengers"; except that vehicles coming south from Fulton street are permitted to keep along Court street and Jerolamon street to Pearl street. The effect of this is of course to also close the streets leading into the square to general use for at least one block. Every approach to the said square is guarded and picketed by mounted men like the approaches to a military camp or headquarters. It is a very extraordinary sight. Many do not know what to make of it, for a block of vehicles in Borough Hall Square has never been known, and there have been almost no cases in the courts of injuries from street accidents there.

It is a thing too well known to call for the citation of authorities, that the highways are under the control of the State Legislature, and that even it cannot cause a highway to be wholly or partly closed without providing for compensation to the abutting owners. Every abutting owner has a property right in the maintenance of the highway in full use. This property right is not merely that the abutting owners may get in and out. It also embraces the right to have their highway open as a thoroughfare to the whole community, for the purposes of travel, convenience, publicity and trade. Merchants, for instance, have the right to have their street freely open, so that they may get customers by means of their signs and the display of their goods. One may drive by to-day and seeing a sign or displayed goods come back another day to trade. And every person, though not an abutting owner, has also the right to have the highways freely open to him.

The Legislature has from time immemorial delegated to local authorities a certain limited control of the highways. In towns such delegation of authority is to the boards of commissioners of highways, and in villages and cities it is to similar boards. In the city of New York it is to the board of aldermen, by section 50 of the city charter (Laws 1901, p. 28, c. 466). For the Legislature to place the control or local administration of highways in a constable or the head of the

police, would be a most extraordinary event. It would be so contrary
to the course of English and American law and government as to
excite surprise. We do such things through local legislative or ad-
ministrative bodies who act on deliberation and with opportunity for
all to be heard, instead of allowing them to be done arbitrarily through
a police official, as is the case where free government does not yet
exist.

Our government is one of laws and not of men, and it cannot possi-
bly endure on any other basis. Those who advocate the changing of
our police from a civil into a military force, and turning the city over
to its commander, either do not know what they are saying, or else
want to destroy our system of free government. Who can think of
any one making such a suggestion in any English city?

By section 50 of the city charter (Laws 1901, p. 28, c. 466) the Legis-
lature has broadly conferred on the board of aldermen "power to
regulate the use of the streets and side walks by foot passengers, ani-
mals or vehicles"; but only "subject to the Constitution and laws of
the state." Whether it has power to enact an ordinance as broad as
the one the defendant has enacted need not be here discussed.

The defendant, however, did not apply to the board of aldermen to
enact an ordinance, but enacted it himself. The learned corporation
counsel has not been able to cite any statute or authority for the police
commissioner to enact laws or ordinances in respect of the streets, much
less to close them to general use. No court decision on the subject
has been found by either counsel, for the reason, apparently, that no
police official has ever before assumed to have such power. All that
is cited for the defendant is section 315 (Laws 1901, p. 136, c. 466) of
the city charter, which is cited from time to time, as we all know, for
every excess of power which those who rule the police assume, al-
though it confers no new powers on the police whatever, as the courts
have pointed out from time to time.

It purports to empower the police force, among other enumerated
things, to "regulate the movement of teams and vehicles in streets,
bridges, squares, parks and public places." But they have that power
without its aid, and always had. It does not purport to confer on the
police commissioner power to make a general ordinance to exclude vehi-
cles from streets or parts of streets. It relates only to the duty of the
police force from day to day and hour to hour to keep an eye on the
traffic in the streets, and regulate its movement, according to the mo-
ment and the emergency. The board of aldermen has passed an
ordinance covering the subject, and it is for it to say whether it will
or may extend the ordinance further. It is not for the police commis-
sioner to make an ordinance overriding or overreaching that of the
board of aldermen, or to make any ordinance at all. It cannot be
claimed that the power in the premises has been given to the police
commissioner and also to the board of aldermen. That would only es-
tablish confusion, for either could override or annul the acts of the
other.

This case does not question the right of the police force to interpose
in any emergency in the streets. If a block occur, or is occurring, they
may lawfully come forward to work it off or prevent it, the same as

any citizen may do, and deflect or turn aside travel, if necessary, but only for the time being. That is a very different thing to the police commissioner assuming authority to permanently close streets, wholly or partly. The police have full power, like all citizens, to interpose in street emergencies, and regulate for the time being the movement of vehicles there, in order to prevent the public peace and order from being interrupted. A policeman may lawfully stand at congested crossings, and by holding up his hand momentarily stop and regulate the movement of vehicles there. This and the like is what section 315 has reference to.

I say nothing of whether the plaintiff has standing to maintain this action, because that was conceded, and the case was placed on the sole question of power in the police commissioner to make the ordinance.

Judgment for the plaintiff.