(110 App. Div. 13)

PEACE v. McADOO, Police Com'r.

(Supreme Court, Appellate Division, Second Department.    December 29, 1905.)

MUNICIPAL CORPORATIONS—STREETS—REGULATION OF TRAFFIC—POWER OF PO-
LICE COMMISSIONER.

Greater New York Charter, Laws 1901, p. 127, c. 466, § 300, authorizing the police commissioner to make rules for the administration of his department, and section 315 (page 136), making it the duty of the police department to regulate the movement of teams and vehicles in streets, do not give the police commissioner power to prohibit, by general rule, the movement of any teams or vehicles in parts of certain streets.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 1509–1514.]

Bartlett and Woodward, JJ., dissenting.

Appeal from Special Term, Kings County.

Action by Ahi Peace against William McAdoo, as police commissioner of the city of New York. From an interlocutory judgment in favor of plaintiff, defendant appeals.    Affirmed.

See 92 N. Y. Supp. 368.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOOD-WARD, JENKS, and HOOKER, JJ.

James D. Bell, for appellant.
Sanders Shanks, for respondent.

JENKS, J.    On November 16, 1904, the police commissioner of the city of New York made certain general rules for street traffic, which in part prohibited generally the passage of vehicles in parts of certain streets.    The Special Term has entered an interlocutory judgment on demurrer which declares that such part of the rules is null and void.    This is an appeal by the police commissioner from that judgment.

Such rule is in exercise of the police power which primarily is lodged in the state itself (New Orleans Gas Company v. Louisiana Light Company, 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516), and which is expressed by legislative enactment.    A police officer, who is but a public or state officer vested with such powers and duties as are conferred by statute (Woodhull v. Mayor, 150 N. Y. 450, 454, 44 N. E. 1038), has, of course, no inherent police power.    The Legislature, as the assembly of the sovereign people, may delegate such power of legislation (1 Dillon's Municipal Corporations, 141; Cooley's Const. Lim. 172n), and frequently confers it upon the local legislative body proper of a municipality.    Freund on Police Powers, § 10, writes:

"The exercise of the police power for the protection of safety, order, and morals constitutes the police power in the narrower or primary sense of the

term. It is a power so vital to the community that it is often conceded to local authorities of limited powers. It is the police power in this narrower sense of the term which the Supreme Court of the United States concedes on principle to states even where its exercise affects interstate and foreign commerce."

There are instances where such power has been delegated beyond the strictly local legislative body of a municipality. People ex rel. Cox v. Special Sessions, 7 Hun, 214; People ex rel. Lieberman v. Vandecarr, 175 N. Y. 440, 67 N. E. 913; Commonwealth v. Plaisted. 148 Mass. 375, 19 N. E. 224, 2 L. R. A. 142, 12 Am. St. Rep. 566; and authorities cited. A reading of section 43 of the Greater New York Charter (Laws 1901, p. 23, c. 466), that which confers generally this power upon the board of aldermen, indicates that there is some legislative power in the head of the department of police. Section 300 of the charter authorizes the police commissioner to make, adopt, and enforce rules and regulations for the government, discipline, and administration of his department, the force, and its members. The rule in question is made pursuant expressly to section 315, which in part provides:

"It is hereby made the duty of the police department and force at all times of day and night, and the members of such force are hereby thereto empowered * * * to * * * regulate the movement of teams and vehicles in streets, bridges, squares, parks and public places."

The question, then, is whether, under these sections, the commissioner of police could by general rule prohibit the movement of teams and vehicles generally in parts of a city street. I think that he could not, for the reason that power to regulate is not power to prohibit. A statute of delegation of powers is strictly construed; "any reasonable doubt as to the existence of a particular power being resolved against it." Endlich, Cons. of Statutes, § 490. The author in this section writes:

"Alike applicable to both is the principle that rules and by-laws are construed like other provisions encroaching on ordinary rights of persons. They must in pain of invalidity be reasonable and not in excess of the statutory power authorizing them, or repugnant to that statute or the general principles of law."

The very idea of a street imports the right of the general public to pass and repass thereon throughout all part thereof. In people v. Kerr, 27 N. Y. 188, 194, the court says:

"The right of the public—that is, of the people of the state—in a street or highway is a right of passage. In the ordinary use of the highway it is a right to pass and to repass over its surface on foot or in carriages, at pleasure."

In Smith v. McDowell, 148 Ill. 51, 35 N. E. 141, 22 L. R. A. 393, it is said:

"The municipality in respect of its streets is a trustee for the general public, and holds them for the use for which they are dedicated. The fundamental idea of a street is not only that it is public, but that it is public in all its parts for free and unobstructed passage therein by all persons desiring to use it."

When the Legislature confers upon one whose duties are primarily executive a power to deal with an existing public right, every in-

tendment is that the Legislature would preserve the right, and not thus afford a means to destroy or to impair it. I think that the Legislature has preserved this right, in that it has conferred the power of regulation only. To regulate implies that there exists the subject which is to be regulated. The right of regulation is restricted to the "movement of teams and vehicles in the streets." This expression recognizes the existence of such a thing, and such movement in every part of a street is a public right. If, under the guise of a regulation, that movement is forbidden in any part of a street, there is, of course, an impairment of the right—a pro tanto prohibition against its exercise. The following authorities sustain my interpretation of the words "to regulate" and of the power conferred by the right of regulation. Anderson v. Willington (Kan.) 19 Pac. 719, 2 L. R. A. 110, 10 Am. St. Rep. 175; Ex parte Patterson (Tex. Cr. App.) 58 S. W. 1013, 51 L. R. A. 654; McConvill v. Mayor, 39 N. J. Law, 44; Thousand Island Park Ass'n v. Tucker, 173 N. Y. 203, 65 N. E. 975, 60 L. R. A. 786; Toronto v. Virgo (1896) A. C. 88; People v. Gadway (Mich.) 28 N. W. 101, 1 Am. St. Rep. 578; Andrews v. State, 3 Heisk. 165, 8 Am. Rep. 8. I find nothing adverse in the definition of Marshall, C. J., in Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23, cited by the learned corporation counsel. The learned Chief Justice defined "regulate" as to "prescribe the rule by which commerce is to be governed," and afterwards said that the word implied "full powers over the thing to be regulated." But to prescribe a rule for government, even though it afford the exercise of full powers, does not imply the power to prohibit absolutely the thing to be controlled. In Cronin v. People, 82 N. Y. 318, 37 Am. Rep. 564, also cited by the learned corporation counsel, the power considered was to regulate the "erection, use and continuance," and the court held that the power applied to the "erection"; i. e., so that the territory whereon the slaughterhouse could be placed might be prescribed. But the subject of the present regulation is not a business which essentially must have definite location, but a movement through all parts of a public street, which to exclude therefrom or any part thereof is to affect the very thing itself. And further, in Cronin's Case, supra, the court said that the power to regulate "implied a power of restriction and restraint." But there can be full restriction and restraint without prohibition, nor do those words necessarily imply the power to prohibit. In re Snell, 58 Vt. 207, 209, 1 Atl. 566. In Jorgensen v. Squires, 144 N. Y. 280, 284, 39 N. E. 373, 374, Andrews, C. J., uses the word aptly in the expression:

"While such uses may restrict somewhat the full and unembarrassed use of the street for pedestrians. * * *"

I am not cited to any authority, and I find none, which holds that under the power of regulation any public body or officer can as a general rule prohibit the passage of all vehicles to and fro in any part of a public street. There are cases which uphold the exclusion of heavy drags lest they break into the roadbed, or of vehicles which carry stuff offensive to the public, or dangerous to the public health or safety. There are cases which uphold the exclusion of persons when they misuse the street, so as to assemble crowds to block the way of.

the general public. There are cases which sustain a regulation that restricts the vehicles of a stage line to certain prescribed streets as routes. But these judgments are based not on a derogation of the general public right, but in furtherance of it, in that the right is general. I make no attempt to define the powers of the commissioner under these statutes, but I have no doubt that he could by general rule exclude teams or vehicles from parts of a street, or even from a street, in case of an emergency, like a conflagration or an abnormal congestion of traffic due to some unusual cause. I have no doubt that he can bring order out of a chaos of vehicles by prescribing general rules for relative lines of travel, for alignment, for halting a movement for a time in order to afford relative rights of passage to other teams and vehicles or to pedestrians, and in general he may by general rules execute that policy which under his present direction has both facilitated and safeguarded passage in our streets.

If I am right in my view of the power, this disposes of the present appeal and leads to an affirmance of the judgment. There is no need to discuss the reasonableness of the regulation or any other feature of it. I have sought to point out that the police power and the exercise of such power by a subordinate are quite different things, with the difference that exists between a sovereign and his servant.

The judgment is affirmed, with costs. All concur, except BARTLETT and WOODWARD, JJ., who dissent.