The People of the State of New York, Plaintiff, *v.*
Timothy S. Mahoney, Defendant.

(County Court, Kings County, November, 1909.)

Municipal corporations — Interpretation and effect of ordinances — Interpretation of ordinance relating to use of streets — When not applicable to officers of fire department.

> Municipal regulations for the control of traffic in the streets of a city, prescribing the side of the street to be used by vehicles moving in a given direction, are not applicable to the officers and employees of a municipal fire department when engaged in the performance of duties requiring the exercise of haste for the public safety.

Appeal from the decision and judgment of a city magistrate convicting the defendant, the acting superintendent of the fire alarm telegraph bureau of the boroughs of Kings and Queens, of the violation of the ordinances of the city of New York known as the " Rules of the Road."

Charles G. Mead, for plaintiff.

James D. Bell,. assistant corporation counsel (Charles Chadwick, of counsel), for defendant.

Fawcett, J.   This is an appeal from a decision and judgment of a city magistrate, made herein on the 7th day of May, 1909, whereby the defendant, Timothy S. Mahoney, a public servant, was found guilty of a violation of certain ordinances of the city of New York, known as the "Rules of the Road."

It appears that the defendant is acting superintendent of the fire-alarm telegraph bureau of the boroughs of Kings and Queens; that at about five o'clock on the afternoon of January 26, 1909, the defendant, while on duty, accompanied by a lineman named Hickey, was driving easterly in a fire department rig, along the southerly or right hand side of Livingston street, approaching Nevins street *en route* to

29

Flatbush to intercept a construction gang for the repair of signal wires. It was an emergency job caused by reason of a sleet storm, and there was just about daylight enough to get the line closed in before night so that signals could be transmitted to the fire companies; that the fire department buggy, in which defendant was driving, overtook a trolley car at the corner of Nevins street, that had come to a stop to permit some passengers to get off; that the rig in which the defendant was driving was immediately in the rear of the car, and there were three moving vans passing to the right, between the car and the curb.

The witnesses for the people do not remember the three large vans, but they do not deny that they were there, or that passengers were getting on and off that side of the car.

It appears that there was not room for the defendant to pass to the right of the car on either side of the vans, so he passed to the left of the car, within two or three feet thereof, and drove about two car lengths ahead of it, so as to avoid contact and clear the car, and then turned back to the right and the extreme south side of the street; that the westerly bound track was clear and the northerly side of the street was free from traffic, at the time, for a distance of at least a block; that the defendant was then arrested, charged with "unlawfully driving a horse and wagon on the north side of Livingston street in an easterly direction, in violation of the Rules of the Road."

The police power of the State is lodged in the Legislature thereof, and the Legislature may delegate such power. But a police officer has only the express powers conferred by statute and has no inherent police power. Peace v. McAdoo, 110 App. Div. 13.

The Legislature, by section 315 of the Greater New York charter, authorized the police force of the city to "regulate the movement of teams and vehicles in streets, bridges, squares, parks, and public places," but did not confer upon the police commissioner the power to make a general order that would exclude the defendant, a public servant, acting superintendent of the fire department, while engaged in the discharge of an important duty vitally connected with the

public safety, from the use of the road in the way and manner, as is indisputably shown herein, and under all the then existing circumstances and conditions in this case.

Any regulation or ordinance which requires an officer of the fire department on an emergency job, or in the discharge of functions vitally connected with public safety, to wait behind a vehicle when there is a perfectly clear and safe passage to the left of it, would be plainly unreasonable.

The spirit, purport and purpose of the statutes and ordinances applicable hereto are, in effect, that the police and fire department should co-operate for protection against fires. City Ordinances, §§ 449, 455; Greater N. Y. Charter, §§ 741, 748.

In the case at bar, the defendant was on a mission of vital importance, calling for the repair of signal wires that had been torn down and rendered useless by reason of a sleet storm a few hours previous. It was midwinter and about five o'clock in the afternoon. There remained just about daylight enough to get to the place where the damage had been created and make the needed repairs before nightfall. It was an exigency requiring certain essential work to be done with all possible speed for the protection and safety of a thickly populated section of our city, that was, by reason of said damaged signal wires, without means of fire-alarm protection. The defendant, in driving to the place where the signal wires were down, did not do anything more than was necessary in passing the standing car and moving vans that formed the obstruction. The defendant drove to the right until the occasion arose to turn out. He then turned out to the left, passed the trolley cars and vans and turned in to the right hand side of the street again, between the car tracks and right hand curb. Even though the defendant had violated the letter of some traffic rule, the urgency of his duty at the time would have been a complete defense.

The judgment of the court below, adjudging the defendant guilty, is reversed, and the complaint dismissed.

Judgment **reversed.**