31 P.(2d) 258

## TOMLIN et ux. v. TOWN OF LAS CRUCES.

### No. 3843.

Supreme Court of New Mexico.

March 20, 1934.

J. H. Paxton, of Las Cruces, for appellants.

E. G. Shannon, of Las Cruces, for appellee.

BICKLEY, Justice.

Plaintiffs brought suit to enjoin the town of Las Cruces from interfering with the designation and location of highway No. 80, a federal aid and interstate highway, and from enforcing section 26 of ordinance 127 of the town of Las Cruces relative thereto. From an order sustaining a demurrer to their first amended complaint, plaintiffs appeal.

The complaint alleges that in 1927 the state highway commission designated and marked with official federal aid and other direction signs highway No. 80, constructed partly with moneys of the United States and partly with moneys of the state of New Mexico, on Alameda boulevard from the south through the town of Las Cruces as far as Las Cruces avenue; that early in 1929 the commission designated and marked with similar signs the said highway in Las Cruces from Las Cruces avenue northward on Alameda boulevard to Young avenue, and thence westward on Young avenue across the viaduct over the Santa Fe Railroad; that in 1928 one Featherston, plaintiffs' predecessor in title to property abutting on highway No. 80 as laid out and marked by the commission, at a point on the Alameda boulevard south of Las Cruces avenue, constructed thereon a tourist camp, known as Camp Las Cruces, which he operated commercially for profit; that on July 30, 1929, the town of Las Cruces, through its board of trustees, "without lawful power or authority," enacted a resolution redesignating and relocating highway No. 80 through the town of Las Cruces; that in pursuance thereof it removed the direction signs which had been placed by the highway commission on Alameda boulevard between Lohman avenue and Lucero

avenue, and erected direction signs for highway No. 80 on Lohman avenue from Alameda boulevard to Main street, and on Main street from Lohman avenue to Lucero avenue, and on Lucero avenue from Main street to Alameda boulevard, and direction turn signs on Alameda boulevard near Lohman avenue and near Lucero avenue, thus:

that, on August 24, 1929, the town, through its board of trustees passed an ordinance providing:

"Sec. 26. For the purpose of directing, routing and regulating traffic upon all streets and highways in the Town, the Board of Trustees shall have the power to designate the routes of Federal Aid Highways, State Highways, state roads and other streets and highways through the town, and to change and alter such designations when the public interest requires. It shall be unlawful for any person, firm or corporation to erect, place, install or maintain any route, street or highway sign, marker or direction guide within the corporate limits of the Town without first securing the written permission of the Board of Trustees. Any such sign, marker or direction guide heretofore and now maintained in violation hereof, and any such sign, marker or direction guide which shall hereafter be erected, installed, placed or maintained in violation hereof, shall forthwith be removed upon written order of the Board of Trustees; and the failure or refusal of any person, firm or corporation to comply with such order of the Board of Trustees shall be a separate offense, and punished accordingly." Ordinance No. 157.

Subsequently thereto plaintiffs acquired their title to the aforesaid property of Featherston, and have continuously operated Camp Las Cruces since November 16, 1929.

The redesignation of highway No. 80 by the town, and the alleged enforcement of section 26 of ordinance 157 are alleged to injuriously affect the public in very material-

ly increasing the distance to be traveled on highway No. 80, and in introducing to said highway four sharp turns instead of a straight road, and in subjecting traffic on the highway to frequently occurring congestion of traffic on Main street of the town of Las Cruces. It is further alleged that highway No. 80 in New Mexico extends from the town of Anthony on the south boundary of the state, across the state to a point near the town of Rodeo on the west boundary of the state, and is a link in the principal southern interstate and transcontinental highway, bearing much tourist and other traffic at all times of the year; that this traffic is diverted from passing plaintiff's property, resulting in great loss of business; that "there are many other tourist camps, automobile dealers, repair garages, rest houses and other business enterprises devoted especially to the needs of the automobile traffic, and many other business enterprises of a more general character, located and conducted on tracts of land abutting on Alameda Boulevard between Lohman Avenue and Lucero Avenue, and owned and occupied by many different persons, the rights and interests of the several owners of all which abutting tracts of land and business enterprises have been and are affected in the same way and manner as plaintiff's rights and interests are affected by the said unauthorized acts of defendant town of Las Cruces"; and that there is a reasonable probability of a multiplicity of suits against the defendant. The complaint concludes with a prayer for injunctive relief against the acts complained of, and for incidental damages.

The trial court sustained defendant's demurrer to this complaint on the ground that, even though the town of Las Cruces may not have had authority to change direction signs on highway No. 80, nevertheless, plaintiff, as a private citizen, had no such right in the maintenance of highway route signs as to enable him to maintain a cause of action for the wrongful removal of signs placed there by the highway commission.

We think the trial court correctly decided.

We do not doubt the power of a court of equity to grant relief in a proper case at the suit of a private individual who suffers some injury from a public nuisance such as an obstruction placed in a highway and which injury is distinct from that of the public.

There is no claim in this case that defendant committed any acts amounting to a physical obstruction of the highway.

Plaintiff's argument is that looking at the matter realistically, it seems probable that as to a substantial portion of the traveling public, the moving of the direction signs complained of, constitutes as effective a barrier to the use of the portion of highway No. 80 on Alameda boulevard between Lohman avenue and Lucero avenue, as would the placing of physical obstructions to its access.

It has been held that an abutting property owner has no such special interest in the mere designation of the highway upon which his property abuts as to give him a right to enjoin the state's authorized agency within the limits of its lawful powers from changing such designation to another highway.

Elliott v. Ely (Tex. Civ. App.) 58 S.W.(2d) 839; Agnew v. Hotchkiss, 189 Wis. 1, 206 N. W. 849; Sloan v. State Highway Department, 150 S. C. 337, 148 S. E. 183. Appellant concedes this to be the law, saying:

"And there has always been and can always be change and improvement in roads and routes by lawful authority and in a lawful manner."

We find appellants' attempt at analogy between the acts done by defendant and the placing of actual obstructions in a highway unsatisfactory. None of the usual rights of an abutter, such, for instance, as right of ingress and egress, are disturbed.

In Asplund v. Hannett, 31 N. M. 641, 249 P. 1074, 1077, 58 A. L. R. 573, we said: "Of course, it is well understood that equity awards its injunctive writ only to prevent irreparable injury for which there is no adequate and complete remedy at law. The injury must consist, to speak broadly, in the invasion of some right of the complaining party."

If the appellants here do not have a right in the mere designation of the highway upon which their property abuts, so as to give them a right to an injunctive writ to enjoin the state's authorized agency from changing such designation from another highway; a right in such designation is not created by unauthorized acts of interlopers.

It is not enough that plaintiffs establish that defendant committed a wrong or invades the province of the state's authorized agency. A violation of some positive legal right of plaintiffs must be shown.

The action of defendant in removing the direction signs which had been placed on the highway by the highway commission may have encroached upon the jurisdiction of the state highway commission and may even have been a misdemeanor, but it violated no legal right of the plaintiffs, distinct from that of the public. Such right as they have is political, enforceable only as other political rights are maintainable.

Assuming, as the trial court assumed, that the power to locate and designate state highways even within the corporate limits of a town rests primarily in the state highway commission, we still discover in our statutes a legislative attitude calling for co-operation with the local authorities in the matter of construction and maintenance of highways and in regulating the traffic thereon.

Reading the text of Elliott on Roads and Streets, we find it stated that:

"It sometimes happens that two different bodies attempt at the same time, to exercise control over a street or road." (Sec. 543.)

We attach no significance to these suggestions beyond their support to the view that if the state highway commission has a power to exercise which under certain circumstances it may exercise indirectly by acquiescence in what the local authorities undertake, it would seem adequate to leave it to the different bodies to fight it out between themselves in the event one set of officers feel that their jurisdiction is being impinged upon.

The highway commission, for all we know, may have acquiesced in the change in the

designation of the highway. In any event, the wrong, if one has been committed, is one to be redressed otherwise than by injunctive relief at the suit of a private individual.

Finding no error in the record, the judgment is affirmed, and it is so ordered.

WATSON, C. J., and SADLER, J., concur.

HUDSPETH, Justice (dissenting).

A quarter of a century ago the Legislature enacted Laws 1909, c. 42, creating a highway commission and authorizing the construction of such highways as in their judgment "will best subserve the interest of the general public, looking to the construction and maintenance of a complete system of highways in the state." 1929 Comp. St. § 64-331. Since that time, there has been invested in our highways in the aggregate a sum equal to about 10 per cent. of the assessed valuation of all the property in the state. A very considerable part of this has been contributed in gasoline taxes by tourists from other states. Large sums of public money have been spent in attempts to attract such tourists. The history of our legislation shows a consistent policy, both as to the carrying out of the declaration above quoted and as to the cordial welcome extended tourists. Gallegos v. Conroy, 38 N. M. 154, 29 P.(2d) 334.

The unauthorized and unlawful acts of the appellee were in utter disregard of the comfort and convenience of our guests, the tourists, who are perhaps the only travelers affected by the changing of the highway signs. The resident knows his way about and was no more affected by the changing of the highway signs than he would have been by a misspelling in the name of the street. But the tourist follows these signs as the hound follows the scent of the fox. This is common knowledge. This traffic was diverted · by changing the signs as effectively as it would have been by putting a gate at the street intersection, with a keeper who turned all nonresident cars off the highway. That the appellants, whose business depends largely upon the tourist trade, would be entitled to injunctive relief against such a physical obstruction is unquestioned. See Peace v. McAdoo, 110 App. Div. 13, 96 N. Y. S. 1039; Id., 46 Misc. 295, 92 N. Y. S. 368, 369.

"The right to conduct one's business without the wrongful * * * interference of others is a valuable property right which will be protected, if necessary, by injunctive process." Hardie-Tynes Mfg. Co. v. Cruise, 189 Ala. 66, 66 So. 657.

There are scores of other towns and villages along the route of our state highways, with tradesmen and keepers of tourist camps who would like to have the traffic diverted so as to pass their places of business. If the town or village board is held to have the power to cause such diversion of traffic from the highway, the matter of the routing of tourist traffic will be thrown into the realm of local politics, the tourist incommoded and the public policy as declared by the Legislature flaunted. I am not sure that the majority mean to imply such a power in local authorities, but I am convinced that such is the practical effect of their holding.

The remedies suggested in the majority opinion for the correction of the evil illustrated by the situation presented by the case at bar are criminal prosecution initiated by the Attorney General, and suit instituted by the highway commission for the encroachment upon its jurisdiction. A moment's reflection will suffice to indicate the inadequacy of the suggested remedies.

I cannot agree with the majority that the rules of equitable jurisdiction are so inflexible as to prevent the application of the more effective remedy of injunction at the suit of a private person directly and pecuniarily injured by the unlawful acts complained of. I am fully aware that there is no direct precedent in the books for the allowance to an individual situated as the appellants in the case at bar are, of injunctive relief against acts similar to those here complained of. Transcontinental highways are, however, a comparatively recent development, and they present new problems which are not comparable in many respects to those presented by the older cases on the law of roads and streets and of the rights of owners of property abutting thereon. There are recent cases, cited in the majority opinion, very properly holding an owner of abutting property to have no such vested right in the mere designation of the highway upon which his property abuts as to give him a right to enjoin the state's authorized agency, within the limits of its lawful powers, from changing such designation. But I find myself unable to perceive wherein it logically follows from the fact that appellants may have no right, as against the highway commission, acting

within the limits of its lawful powers and discretion, in the designation of Alameda boulevard as highway No. 80, that they therefore have no such right as against unlawful interlopers.

It is well settled law that, although equity will not enjoin the action of a municipal corporation while proceeding within the limits of its defined powers, it has the power to restrain it from acting in excess of its authority and from committing acts which are ultra vires. High on Injunctions, par. 1241; see, also, 5 Pomeroy, Equity Jurisprudence, §§ 341, 354. Moreover, as was pointed out in Fitzhugh v. City of Jackson, 132 Miss. 585, 97 So. 190, 191, 33 A. L. R. 279:

"While there are some authorities to the contrary, the great weight of authority and the better reasoned cases hold that, where a municipal ordinance is void and its provisions are about to be enforced, or are being enforced, any person who is injuriously affected thereby either in his person or the use of his property may go into a court of equity to have the enforcement of the ordinance stayed by injunction."

The allegations of irreparable injury suffered by appellants because of the unlawful acts of appellee are uncontroverted. The injury suffered by them may be similar to that suffered by all owners of property abutting upon that portion of Alameda boulevard from which traffic is unlawfully diverted, but it is obviously sufficiently different from that suffered by the general traveling public and the citizenry of the state to constitute it a "special" injury. See Jeremiah Smith, Private

Action for Obstruction to Public Right of Passage, 15 Col. Law Rev. 1, at p. 9 et seq. Whether that special injury has been the result of such technical "vacation" of the highway or such physical "obstruction" as amounted to a destruction of the private right of ingress and egress, rather than the result of some other unlawful act, seems to me to be beside the point. For, as was suggested in Piscataqua Nav. Co. v. N. Y., N. H. & H. R. Co. (D. C.) 89 F. 362, at page 364:

"Ownership of abutting real estate would obviously be an important element in the question whether special damage had in fact been sustained, but it is at least very doubtful if it is anything more."

Assuming a violation of some technical easement or right attaching to abutting ownership to be a necessary condition to the right to injunctive relief, I am of the opinion that those abstract rights embrace, at least as against wrongdoers, the right to anything that actually adds to the value of the abutting property. See 4 McQuillin, Municipal Corporations, § 1426 (2d Ed.); Park Hotel v. Ketchum, 184 Wis. 182, 199 N. W. 219, 33 A. L. R. 351; Motoramp Garage Co. v. Tacoma, 136 Wash. 589, 241 P. 16, 42 A. L. R. 886. For, to quote from the opinion of Vann, J., in the case of Donahue v. Keystone Gas Co., 181 N. Y. 313, 73 N. E. 1108, 1109, 70 L. R. A. 761, 106 Am. St. Rep. 549:

"As a general rule, whatever renders a street more valuable to the people at large renders it more valuable to the abutting owner, for he has all their rights of user, besides other rights which are peculiar to himself.

* * * Among his rights are those of light, air, and access, each long resisted, but now well established as safe from the onslaught of wrongdoers, even including those who erect an elevated railroad in a street with the sanction of law. * * * In settling the law to this extent, general expressions have sometimes been used by the court, indicating as its opinion that these easements of light, air, and access are the only rights which an abutting owner has in a public street of which he owns no part. Courts settle the law by passing upon actual questions, not by advancing abstract theories, and the words of exclusion should be limited to the facts of the case in hand when they were used, as was doubtless the intention. * * * No adequate reason is given for the attempt to limit the easement to light, air, and access. What distinction, in principle, is there between these benefits, which are incidental to a street, and any other incidental advantage which adds to the value of abutting land? * * * Is it better to limit the recovery to cases founded upon a mere technicality, or to extend it to all where substantial injury is inflicted upon the abutting owner by the act of a wrongdoer in a public street?"

It is suggested in the majority opinion that the highway commission may have acquiesced in the change in the designation of highway No. 80. If the complaint leaves that fact uncertain, then the case decides no more, perhaps, than a question of pleading. However, I apprehend that my brethren would hold that appellee's demurrer should be sustained even though the complaint, instead of alleging that the acts of the defendant were un-

lawful and unauthorized, alleged that the acts complained of were done "without the consent of the Highway Commission."

Being of the opinion that the instant case presents a question of vital importance to the welfare of the state, that the promotion of the public policy as declared by the Legislature demands, while sound legal and equitable principles permit, the allowance of the remedy here sought, I am constrained to voice my dissent.

ZINN, J., joins in this dissent.