DARNALL et al., Respondent v. STATE et al., Appellants

(108 N.W.2d 201)

(File No. 9859. Opinion filed March 3, 1961)

60

John B. Wehde and Robert V. Haeder, Asst. Atty. Gen., and Parnell J. Donohue, Atty. Gen., Pierre, on the brief, for Defendants and Appellants.

Joseph M. Butler, Bangs, McCullen, Butler & Foye, and H. F. Fellows, Rapid City, and T. R. Lehnert, Rapid City, on the brief, for Plaintiffs and Respondents.

BIEGELMEIER, J.

This is what plaintiff terms an inverse condemnation action against the state of South Dakota and the members of the State Highway Commission for damages for claimed loss of access to a highway. Plaintiffs are the owners of three lots on the edge of the village of Piedmont with 150 feet of frontage on the west side of First Street; on these were a small cafe, a two-unit and a four-unit cabin and a gas pump. The street was 80 feet in width and designated as U. S. Highway 14 and State Highway 79. It had a blacktop surface of standard width with two lanes of travel from which motorists could drive into plaintiffs' property. Most of plaintiffs' business came from tourists in summer and some truckers during the year. In 1958 the state took proceedings to construct Interstate Highway No. 90 in that vicinity as a controlled-access highway with two separated roads of two lanes each. In this construction the blacktop surface of Highways 14 and 79 was not changed, except to remove the old surface and replace it with a new blacktop surface at the same level and width; neither was any change made which in any way interfered with or limited the access of plaintiffs to Highways 14 and 79 or persons using it. The construction of which plaintiffs complain is that a concrete curb and gutter was installed on the east side of this two-lane blacktop surface, which separated Highways 14 and 79 from the new Interstate. This curb and another about two feet farther east en-

close a blacktopped walkway; they prevent traffic on 14 and 79 from entering the Interstate and prevent traffic on the Interstate from entering 14 and 79, except at two interchanges nearly a mile north and south of plaintiffs' property. The exact location of these curbs does not appear nor was it shown that they occupied any part of the property to which plaintiffs had title subject to the easement for street or highway purposes. As owners of the land bounded by a road or street plaintiffs are presumed to own to the center of the way unless the contrary be shown. SDC 51.0704. This burden was on plaintiffs and it will be presumed that the original highway was laid out half on each owner. SDC 1960 Supp. 28.0113. There was no interference with or change in the highway on the west side or of any part of the traveled portion. The evidence indicates that only the former ditch on the east side of the traveled and blacktopped surface of the highway was occupied by the Interstate highway. The southbound and the northbound roads of the Interstate were separated from each other by a ditch. Traffic regulations and signs require the northbound traffic to drive on the east road of the Interstate; this diverts all northbound traffic to it, and with the ditch prevents such traffic from crossing over to plaintiffs' property; all of this road was constructed completely to the east of the old highway right of way.

Trial to a jury resulted in a verdict for plaintiff for $7,000 upon which a judgment was entered against the state. The assignments of error challenge the court's instructions, denial of the state's motion for a directed verdict, for judgment notwithstanding the verdict and the judgment.

■■■ Division I. At oral argument the question of sovereign immunity was raised by a member of the court. It was not argued in the briefs. Immunity of a sovereign state may not be waived by its attorneys, Arkansas State Highway Commission v. McNeil, 222 Ark. 643, 262 S.W.2d 129, or Attorney General, Dunn v. Schmid, 239 Minn. 559, 60 N.W.2d 14. This court may raise the point of its appellate

jurisdiction on its own motion, Chicago, M. St. P. & P. R. R. Co. v. Board of Railroad Commissioners, 64 S.D. 297, 266 N.W. 660; and this applies to the jurisdiction of the trial court with equal force. See O'Neal v. Diamond A Cattle Co., 63 S.D. 481, 260 N.W. 836. By the appeal, an appellate court acquires jurisdiction sufficient to determine that the trial court had or lacked jurisdiction. Beadle County v. Board of County Commissioners, 62 S.D. 86, 251 N.W. 816. That an action cannot be maintained against the state in the absence of statutory or constitutional authority has been long accepted by the courts. Griffis v. State, 68 S.D. 360, 2 N.W.2d 666. It is not an inherent right. Sigwald v. State, 50 S. D. 37, 208 N.W. 162. We have had occasions to deal with it in several other cases. Kansas City Bridge Co. v. State, 61 S.D. 580, 250 N.W 343; Alexander v. State, 74 S.D. 48, 48 N.W.2d 830.

■ ■ Division II. Art. VI, § 13 of the State Constitution declares "Private property shall not be taken for public use, or damaged, without just compensation as determined by a jury * * *". The power of eminent domain is an inherent right vested in a sovereign state as a necessary attribute thereof. 5 Am.Jur., Eminent Domain, § 7. It has long been established that it was unlawful to take private property for a public use without due compensation even where there was no such constitutional limitation. Hyde v. Minnesota, D. & P. R. Co., 29 S.D. 220, 136 N.W. 92, 40 L.R.A.,-N.S., 48. Art. III, § 27 of the Constitution reads "The legislature shall direct by law in what manner and in what courts suits may be brought against the state". Under these and similar constitutional provisions, courts have differed as to whether common-law actions may be brought against the state where express consent has not been given. The following indicate their differing viewpoints: Rose v. State, 19 Cal.2d 713, 123 P.2d 505; Tomasek v. State, 196 Or. 120, 248 P.2d 703; Commonwealth v. Kelley, 314 Ky. 581, 236 S.W.2d 695; Sale v. State Highway and Public Works Commission, 242 N.C. 612, 89 S.E.2d 290; State v. Leeson, 84 Ariz. 44, 323 P.2d 692; Angelle v. State, 212 La. 1069, 34 So.2d 321, 2

A.L.R.2d 666; Schmutte v. State, 147 Neb. 193, 22 N.W.2d 691; State ex rel. Oklahoma State Highway Comm. v. Alford, Okl., 347 P.2d 215; Weir v. Palm Beach County, Fla., 85 So.2d 865. The conflict is pointed out and the cases with constitutional provisions are reviewed in Springville Banking Co. v. Burton, 10 Utah 2d 100, 349 P.2d 157. Some of the courts hold the eminent domain provision self-executing and allow the suit against the state as an action at common law, that the failure of the legislature to provide a remedy would make the constitutional provision a hollow mockery instead of a safeguard for the rights of citizens. Apparently plaintiffs chose this action at law under the authorities permitting it. At the same time this court had before it on appeal the contention by the same counsel that injunction was the proper remedy. Fauske v. Dean,—S.D.—, 101 N.W.2d 769, 771. There the court recognized the right to an injunction (although denying it on other grounds) where a remedy at law was not available; the phrase used was "action at law" and referred to a common-law action in circuit court. If no remedy were available the question of the right to such an action would be presented. However, the legislature in this state has provided a remedy in SDC 1960 Supp. 33.0604. There the state has given consent to be sued in the Supreme Court upon a just claim against it which the state auditor has refused to allow. The claimant is required to file a cost bond of $500 with the complaint. "The trial of such action shall be conducted in accordance with * * * any special rule or order made for trial of the particular case by the Supreme Court." This section requires payment of the judgment entered out of the State Treasury. By reason of Art. XI, § 9 of the Constitution which provides no money shall be expended or warrant drawn on the state treasurer except in pursuance of an appropriation for the specific purpose first made this court, in Sigwald v. State, 50 S.D. 37, 208 N.W. 162, came to the conclusion that section did not authorize a suit upon a claim for the payment of which there was no available appropriation. As heretofore indicated, plaintiffs did not pursue this remedy but com-

menced their action in the circuit court which had neither jurisdiction of it nor jurisdiction to enter judgment against the state.

 Turning to SDC 1960 Supp. 28.0231 authorizes the State Highway Commission to locate, construct, operate and maintain the South Dakota sections of the Interstate Highways; 28.0233 authorizes the commission to determine its location, acquire right of way and land under SDC 1960 Supp. 28.13A, designate locations of and establish, limit and control points of ingress and egress to ensure their proper operation, prohibit entrance to or egress from them at points not so designated and construct grade separations at intersections; 28.0235 authorizes the use of state highway funds for construction of the Interstate System; 28.13A01 makes it the duty of the state by and through the State Highway Commission to acquire and pay for any land or easements therein for right of way and 57.3814 appropriates funds for the construction, reconstruction, maintenance and repair of highways under the jurisdiction of the commission. When a conventional highway is established, an abutting owner has a right separate and distinct from that of the general public to its use. This includes the right of access, ingress and egress to the highway subject only to the easement of the public. Edmison v. Lowry, 3 S.D. 77, 52 N.W. 583, 17 L.R.A. 275. It is a separate property right which cannot be extinguished without compensation, State, By and Through State Highway Comm. v. Burk, 200 Or. 211, 265 P.2d 783; it is land or a property right in land that plaintiffs allege has been taken or damaged by the state. If it has, plaintiffs have a just claim against the state (SDC 1960 Supp. 33.0604) for which an appropriation has been made (Sigwald v. State, supra) and for which an action may be commenced in the Supreme Court. Where a state or an agency thereof acting in a sovereign capacity takes or damages private property for public use without exercising the power of eminent domain, it cannot evade the constitutional provision which guarantees the right to compensation but will be obligated to pay the same as if it had proceeded under that power. See Mayer v.

Studer & Manion Co., 66 N.D. 190, 262 N.W. 925 referred to in Bogue V. Clay County, 75 S.D. 140, 60 N.W.2d 218. The constitution should bind officers and agents of the state and the state should not by indirect action be permitted to violate it. It expects and demands compliance by its citizens and they have the correlative right to expect that from the state.

■■■ Division III. We now come to the disposition to be made of this action. Had it been commenced in this court an order would have been entered directing a jury trial in a circuit court. This follows from two provisions of our constitution.

Art. V, § 3 states that no jury trials shall be allowed in the Supreme Court, but in proper cases questions of fact may be sent to a circuit court for trial before a jury. Art. VI, § 13, supra, requires that private property shall not be taken for public use or damaged without just compensation as determined by a jury. That the 1939 Code omitted the provision in § 2111 of the 1919 Code that issues of fact, which the Supreme Court deemed necessary to be tried by a jury, should be certified to the circuit court for trial and authorized the Supreme Court by order to provide for the trial in no way modified either constitutional right of a plaintiff. A waste of time and money would result if we required plaintiffs to commence their action in this court, retry it in circuit court and have the record returned here for final disposition. It is consonant with justice that we assume this action was commenced in this court as required and express our views on the merits upon the complete record now before us.

■■■ Division IV. Here there was no physical taking of any part of plaintiffs' real estate as was involved in State Highway Commission v. Bloom, 77 S.D. 452, 93 N.W. 2d 572 or Schuler v. Board of Supervisors, 12 S.D. 460, 81 N.W. 890, where severance damages were permitted. As recently as 1958 in the Bloom case, this court quoted from Hyde v. Minnesota, D. & P.Ry. Co., 29 S.D. 220,

136 N.W. 92, 99, 40 L.R.A.,N.S., 48, stating the rights of an abutting owner. In the Hyde case the court was speaking of the closing of a street in a block beyond that which plaintiff's property abutted. In the case at bar no part of the highway used by motor vehicles was closed or interfered with; two-lane traffic in both directions may still continue on it as before. Plaintiffs have the same access to the system of highways, including the Interstate as the general public. Their only complaint is that they do not have direct and immediate access to the new Interstate Highway; and inversely, that travelers on it do not have the unrestricted right of direct access to their business establishment. Motor vehicles traveling in a northerly direction in the east segment of the Interstate are now prevented from direct access to plaintiffs' property; this results from the separation of the two roads by a ditch and a regulation requiring northbound vehicles to travel on it. Such traffic may reach plaintiffs' property by use of either interchange; this requires circuity of travel. Circuity of travel is not a compensable damage under these circumstances; it is a burden shared by all the traveling public. Judge Whiting gave such an illustration in the Hyde case, supra. See also State ex rel. Merritt v. Linzell, 163 Ohio St. 97, 126 N.E.2d 53.

The construction of a highway past a place of business gives owners no vested right to insist that it remain there as a changeless road in a changing world. Holloway v. Purcell, 35 Cal.2d 220, 217 P.2d 665; no legal damage results though the traffic may be diverted by authorities and incidental loss result. A highway may be relocated either by marking or construction which would direct traffic some distance away from a business mainly dependent on it. Our statutes recognize, and permit this with some limitations not here pertinent. SDC 1960 Supp. 28.0210-11 and SDC 1960 Supp. 28.09A.

Control of access and roadside development have been found to be necessary for safety and efficiency on modern highways. The collision of this right of access

of an abutting owner and the police power of the states to regulate streets and highways and traffic thereon have been before the courts many times. "In some degree those opposed policies are manifested in the conflict between the constitutional mandate that compensation be paid when private property is taken or damaged for a public purpose and the exercise of police power where compensation need not be paid. The line between those two concepts is far from clearly marked." Bacich v. Board of Control of State of California, 23 Cal.2d 343, 144 P.2d 818, 823. The right of ingress and egress has been held to be subject to reasonable regulations in the public interest and for the promotion of public convenience and necessity. City of Neenah v. Krueger, 206 Wis. 473, 240 N.W. 402. Put another way it has been declared to be a reasonable or convenient access and not access at all points along the highway. Iowa State Highway Commission v. Smith, 248 Iowa 869, 82 N.W.2d 755, 73 A.L.R.2d 680. While they may adversely affect an established business, relocations of a highway, prohibitions against crossing it or against left and U turns, the designation of one-way streets and other similar restrictions and regulations have been upheld as proper exercises of the police power of the state and not of the power of eminent domain. As such they are not compensable. See the Smith case, supra, and cases cited therein. 11 McQuillin, Municipal Corporations, 3rd Ed., § 32.27, p. 319; State, By and Through State Highway Comm. v. Burk, 200 Or. 211, 265 P.2d 783; Tomlin v. Town of Las Cruces, 38 N.M. 247, 31 P.2d 258, 97 A.L.R. 185; State v Ensley, Ind., 164 N.E .2d 342; Springville Banking Co. v. Burton, 10 Utah 2d 100, 349 P.2d 157; Board of Com'rs of Santa Fe County v. Slaughter, 49 N.M. 141, 158 P.2d 859; Carazalla v. State, 269 Wis. 593, 70 N.W.2d 208, 71 N.W.2d 276; 25 Am.Jur., Highways, § 263; 40 C.J.S. Highways § 232; notes in 97 A.L.R. 185; 118 A.L.R. 921 and 43 A.L.R.2d 1072. Curbs or median strips dividing a street or highway which prevent motorists from crossing it to reach a motel or garage, except by a more circuitous route, have been approved and held not to be basis for

an award of damages. Holman v. State, 97 Cal.App., 2d 237, 217 P.2d 448; City of Fort Smith v. Van Zandt, 197 Ark. 91, 122 S.W.2d 187; Brady v. Smith, 139 W.Va. 259, 79 S.E.2d 851. Though one change is accomplished by signs and the other by construction, both are based on the police power of the state; both bring the same result and are damnum absque injuria. Archer v. City of Los Angeles, 19 Cal. 2d 19, 24, 119 P.2d 1, 4. Many of the ramifications of the problems arising from the Interstate Highway program are to be found in 43 Iowa L.Rev. 258; 38 Neb.L. Rev. 377, 407; 1959 Wis. L.Rev. 561.

It is clear that construction of the new highway and separate road to the east of Highways 14 and 79 and the diversion of all northbound traffic over it gave plaintiffs no legal basis for damages, even though such traffic, having chosen to continue north on it, was prevented by a ditch and restrictions from direct access or the right to cross over to plaintiffs' property. This diverted all northbound motorists away from plaintiffs' property with the resultant loss of their business. So the construction of the west section of the new road immediately east of the traveled portion of Highways 14 and 79 and the diversion to it of southbound traffic at some point beyond their property, with the same restrictions and a curb preventing motor vehicles from direct access, did not violate any right of plaintiffs, as they have no right to the continuance of such traffic. Yet for this, in effect, is what plaintiffs contend. Their right of access, of ingress and egress from Highways 14 and 79 remains as it was and from it they have access to all streets and highways. The state has not reconstructed or converted Highways 14 and 79, as plaintiffs claim, into a controlled-access highway so as to prevent or even reduce their use of it. Even assuming part of the east ditch was used in the new construction, this did not interfere with plaintiffs' right of access to the highway upon which their property abuts.

Claimed interference with an abutter's access and rights in the street or highway were considered in

Warren v. Iowa State Highway Commission, 250 Iowa 473, 93 N.W.2d 60; Williams v. Carey, 73 Iowa 194, 34 N.W. 813; Bigley v. Nunan, 53 Cal. 403, cited by Justice Traynor in Bacich v. Board of Control of State of California, supra, 144 P.2d 818, at page 836 and Riddle v. State Highway Comm., 184 Kan. 603, 339 P.2d 301. Plaintiff strongly relies on McMoran v. State, 55 Wash.2d 37, 345 P.2d 598. The opinion in State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988, 992 cited the McMoran case, then referring to State v. Peterson, 134 Mont. 52, 328 P.2d 617 said:

> "It seems to be the law, however, that where land is condemned or purchased for the construction of a controlled-access highway upon a new right of way alongside the old road that an abutting owner of land on the old highway, which is retained as a service road, cannot recover damages for destruction or impairment or loss of access for the reason that his access to the old highway has not been disturbed in the slightest degree."

The same view, though dictum, is expressed in Heil v. Allegheny County, 330 Pa. 449, 199 A. 341, at page 344. See also Board of Com'rs of Santa Fe County v. Slaughter, 49 N.M. 141, 158 P.2d 859; People v. Gianni, 130 Cal. App. 584, 20 P.2d 87. We conclude that where there is no physical taking and the owner's access to the highway on which he abuts is not unreasonably diminished or interfered with, his loss is due to diversion of traffic, a lawful exercise of the police power and there can be no recovery.

Section 13 of Art. VI of the State Constitution creates no property rights; it protects those that already exist. That which was damnum absque injuria before the adoption of the "or damaged" clause remains the same. Speaking of these words in the California Constitution, it was said: "If the property owner would have no cause of action were a private person to inflict the damage, he can have no claim for compensation from the state." Archer v. City of Los Angeles, 19 Cal.2d 19, 24, 119 P.2d 1, 4. A property right must be invaded before compensation is allowed.

No such invasion appears here. Hyde v. Minnesota, D. & P. Ry. Co., supra. The cause is remanded to the trial court with directions to vacate the judgment and dismiss the action.

SMITH, P. J., and HANSON, J., concur.

ROBERTS, J., dissents in part.

RENTTO, J., dissents.

ROBERTS, J. (dissenting in part).

This is an action commenced in the Circuit Court of Meade County against the State of South Dakota and members of the State Highway Commission for the recovery of consequential damages arising out of highway construction work. Plaintiffs allege that their right of access to and across a highway fronting their property has been impaired by the construction of a controlled access interstate highway. The circuit court entered judgment in favor of plaintiffs for damages to their property against defendant State of South Dakota. From this money judgment, defendants have appealed.

The state by reason of its sovereignty is immune from suit except as it consents to be sued. The Constitution, Art. III, § 27, recognizing this right of immunity, vests authority in the legislature to designate "in what manner and in what courts suits may be brought against the state". The legislature may impose such conditions as public policy may require and suits may be maintained against the state only in the manner designated. Griffis v. State, 68 S.D. 360, 2 N.W.2d 666. A distinction exists between sovereign immunity from suit and sovereign immunity from liability. A statute which gives consent to be sued does not create a cause of action in favor of a claimant, but merely subjects the state to the jurisdiction of the court to enforce an existing right. Wisconsin Granite Co. v. State, 54 S.D. 482, 223 N.W. 600. In other words, a court derives jurisdiction of a suit against the state only

from an act of the legislature and subject to the conditions therein imposed.

SDC 1960 Supp. 33.0403 which is included in a chapter entitled "Parties To Actions" provides: "In any and all actions to determine adverse claims to real or personal property, or involving the possession of real or personal property, or to foreclose mortgages or other liens upon real or personal property, or to partition the same, the state of South Dakota may be sued and made defendant in the courts of this state." Consent to be sued generally is not given by this or other authorizing statute.

The majority opinion concludes that the circuit court was without jurisdiction and that officers authorized to represent the state were without authority to waive immunity and thus confer jurisdiction upon the court below. These conclusions are unquestionably correct. It seems obvious that where a judgment is rendered in the circuit court without jurisdiction or authority, regardless of the manner in which this court is informed of the lack of jurisdiction, the action should be dismissed. The jurisdictional defect in the instant action could not have been obviated by amendment of the complaint or otherwise. Mullen & Rouke v. Dwight, 42 S.D. 171, 173 N.W. 645, was in effect an action in the circuit court against the state to recover a money judgment. This court holding "that the circuit court had no jurisdiction to try and determine the action" reversed the judgment with direction that the action be dismissed.

The majority opinion holds that plaintiffs' claim falls within the purview of the provisions of SDC 1960 Supp. 33.0604 permitting original actions in the Supreme Court and then determines whether plaintiffs would have been entitled to relief if action had been commenced in that court. The exercise of the original jurisdiction of the Supreme Court has not here been invoked by the commencement of an action or proceeding therein. Plaintiffs, if they had a remedy, should have proceeded in the proper forum to enforce it. The majority considers and determines ques-

tions that were not involved or argued on appeal from the judgment below and to arrive at the merits has decided an important question of jurisdiction. The jurisdiction that this Court as above indicated may have to adjudicate claims for consequential damages resulting from construction on a state highway must be traced to the constitution or the legislative branch of government which has the responsibility of formulating the state's public policy.

The majority concedes that an action in the Supreme Court under the provisions of section 33.0604, supra, cannot be maintained if there is no available appropriation for the payment of such judgment as plaintiffs might recover. It requires an act of the legislature to authorize the expenditure of state funds. Barnsdall Refining Corporation v. Welsh, 64 S.D. 647, 269 N.W. 853. The question then is whether the legislature has made funds available to pay a claim where no part of claimant's property has been taken, but which has been consequentially damaged by construction of a public highway by the State Highway Commission. I am unable to concur in the views expressed to the effect that there are funds available to pay such a claim. It is the settled law of this state that funds appropriated for highway construction and maintenance (SDC 1960 Supp. 28.0212 and 28.0235) are not available for payment of damages except those which result from failure to pay for highway work completed in compliance with the terms of a contract. Kansas City Bridge Co. v. State, 61 S.D. 580, 250 N.W. 343; Sigwald v. State, 50 S.D. 37, 208 N.W. 162; Griffis v. State, supra; Alexander v. State, 74, S.D. 48, 48 N.W.2d 830; 74 S.D. 593, 57 N.W.2d 121.

The origin and history of certain portions of the statutes of this state pertaining to acquisition of right of way for state highways indicate that the usual and ordinary interpretation of statutory provisions appropriating highway funds is consistent with the results sought to be attained. The State Highway Act of 1919, section 26, provided that each county acquire and pay for lands or right of way on any portion of the State Trunk Highway

to be improved within the county. Chapter 113, Laws 1939 (SDC 1960 Supp. 28.13A) changed this and imposed the obligation to acquire right of way for the improvement of any portion of the State Trunk Highway upon the state. That act for the first time provided the manner in which compensation for the taking or damaging of private property for public use by the State Highway Commission shall be ascertained and payment made. That act (SDC 1960 Supp. 28.13A01) provides that "whenever any land or lands, easement in same or material is necessary for right of way in order to make a safe or proper grade, or for widening, changing, relocating, constructing, reconstructing, maintaining or repairing any portion of the State Trunk Highway, or whenever it is necessary for providing cut slopes, borrow pits, channel changes, or to afford unobstructed vision on said State Trunk Highways at any point of danger to public travel, for right of way and borrow pit, the state of South Dakota, through and by its State Highway Commission, shall acquire and pay for same out of state highway funds. The cost of said land or material and expense of purchase or condemnation shall be paid as part of the cost of the State Trunk Highway." Chapter 136, Laws 1941 (SDC 1960 Supp. 28.13A14) makes provision for the acquisition and payment by the state of land, material, dirt, sand or gravel outside of a right of way. Where a part of private property is taken under these acts either by purchase or condemnation and the remainder is damaged, the damages thereto are compensable. See State Highway Commission v. Fortune, 77 S.D. 302, 91 N.W.2d 675. "Land or material for right of way and borrow pit may be acquired for the state * * * by gift, purchase or condemnation." SDC 1960 Supp. 28.13A02. The legislature by the enactment of the statutes referred to (SDC 1960 Supp. 28.13A) has provided the manner in which compensation for the taking or damaging of private property for public use by the State Highway Commission shall be ascertained. It provides for the taking of private property for right of way, borrow pits and land or materials outside of right of way required for construc-

tion and maintenance of any portion of a state highway and provides specifically purposes for which payments may be made. It is too plain to require discussion that the availability of state highway funds should not by construction be extended to payment of claims not within the contemplation of the legislature. This Court has been consistent in interpreting state highway appropriations as applicable to the specific purposes enumerated therein and I am not persuaded that we should depart from such interpretation. I quote pertinent language from Sigwald v. State, supra: "In the language of the constitutional provision (§ 9, Art. XI), is the above 'an appropriation for the specific purpose' of paying damages arising from the breach of a contract caused by the highway commission? The word 'specific' compels a negative answer to the question whatever the answer might be were it not for that word." [50 S.D. 37, 208 N.W. 163]. England v. State, 61 S.D. 132, 246 N.W. 628; Kansas City Bridge Co. v. State, supra; Griffis v. State, 69 S.D 439, 11 N.W.2d 138; Alexander v. State, supra.

As above indicated, the question is not whether consequential damages come within the purview of the eminent domain provisions of the Constitution (§ 13, Art. VI), but whether funds are available for payment of consequential damages in the present case when no part of the damaged property was acquired for highway purposes. Since an action in my opinion cannot be maintained under the provisions of section 33.0604 solely for such damages for the reason that there is no available appropriation for their payment, there is no authority in this court to determine the issue of liability. It is not materially different from the many cases involving injury or damage to private property resulting from the torts of agents of the state. The legislature must be looked to for relief. See State Highway Commission v. Brixey, 178 Okl. 118, 61 P.2d 1114; State ex rel. Department of Highways v. Keen, Okl., 354 P.2d 396; Dougherty v. Vidal, 37 N.M. 256, 21 P.2d 90, 93. In the case last cited, the court considering the absence of judicial remedy said: "The state must be permitted gener-

ally to pursue its governing and business functions free from interference by its courts. Its Legislature may, indeed, make such provision for suits as its wisdom suggests. It will surround the jurisdiction with such restrictions as public policy may seem to require. * * * We have said so much because of appellant's insistence upon his remediless situation as against an invasion of his constitutional right— a matter to which no court should turn a deaf ear. We are warned, however, that one branch of government may not safely or wisely carry its zeal for the rights of the citizen so far as to encroach upon the functions of a co-ordinate branch. The courts cannot act in a case like this without impairing or destroying the salutary immunity from suit. The Legislature can act in the particular case or by general provision, and with proper regard for the public interest. The Legislature is no doubt as sensitive to injustice as the courts. By unsound or specious reasoning we might arrive at rough justice in a particular case. More often we could do nothing. It is better that all understand that the legislative responsibility is undivided."

Since the action of plaintiffs cannot in my opinion be maintained, I would for the reasons heretofore stated reverse the judgment appealed from with direction that the action be dismissed.

RENTTO, J. (dissenting).

It seems to me that the opinion of the majority proceeds from the premise that the Interstate Highway, where it goes through the village of Piedmont, is a new highway separate and distinct from the old highway that abutted the Darnall property. From the record I get the definite impression that rather than being a separate highway this portion of the Interstate converted the existing conventional highway into one of limited access and that the old highway adjoining plaintiffs' property became a part of the new. This apparently was the view of the trial court and the theory on which the matter was submitted to the jury, without objection by the state.

Our cases seem to hold that an owner of property abutting a highway has a right of direct access to that highway and that this right is a property right which cannot be taken or damaged without compensation. Edmison v. Lowry, 3 S.D. 77, 52 N.W. 583, 17 L.R.A. 275; Hyde v. Minnesota, D. & P. Ry. Co., 29 S.D. 220, 136 N.W. 92, 40 L.R.A., N.S., 48; State Highway Commission v. Bloom, 77 S.D. 452, 93 N.W.2d 572. This rule assures the owner that he and others may go directly from his premises to the highway and from the highway to his premises. By incorporating the old highway in the new, with its limitations on access, plaintiffs' rights in this regard have been damaged. The acquisition of such rights is provided for in the law authorizing controlled-access highways. SDC 1960 Supp. 28.09A.

In an article on this and related matters appearing in the Wisconsin Law Review, Vol. 1959, p. 567, the author on page 580 asks this question:

"Has the abutter's right of access been impaired when the road he formerly abutted is converted into an expressway, his access to the converted freeway is cut off, but access to a service road is provided?"

His answer is

"The courts have not provided a clear answer. Three separate results have been reached in other states: (1) this is not a compensable damage to the right of access; (2) this is a compensable damage to the right of access only where there has been some physical taking of land; (3) this is a compensable item of damage in all cases, but the service road should be considered in mitigation of the damages to be awarded."

In considering this summary it must be borne in mind that under our constitutional provision there may be compensable damage even though no part of the owner's land is taken. State Highway Commission v. Bloom, supra.

Alfred D. Jahr, the author of Jahr, Eminent Domain, (1953) in a paper entitled Compensable Damages Due to Construction of Limited Access Highways, presented to the Second Annual Institute on Eminent Domain, sponsored by the Southwestern Legal Center, Dallas, Texas, February 25-26, 1960, made this statement.

> "If a conventional street, avenue, or highway is converted to or encorporated into a limited access highway and existing access rights are destroyed, the conclusion is irresistible that the owner is entitled to the same just compensation as he would have received had the easements been destroyed by any other taking."

This, as I see it, is the conclusion compelled by our cases.

On the question of remedy I am of the view that this type of action will lie. It seems to me that even if a sufficient appropriation exists to make SDC 1960 Supp. 33.0604 operative, it is inapplicable because under it the right to a jury trial assured by the constitution in these cases, is a matter of grace. I prefer to believe, as stated by the California court in Rose v. State of California, 19 Cal.2d 713, 123 P.2d 505, 511: "that the constitutional provision is self-executing; that is, that even if a statute has not been enacted providing a remedy for damage from the construction of public works, the landowner is entitled to enforce his constitutional right to compensation in a common-law action." Otherwise a solemn constitutional protection, because of legislative inaction, becomes but a pleasant sounding phrase.

Accordingly, I would affirm the judgment.