C., M. & ST. P. RY. CO., Petitioner, v. BOARD OF RAILROAD COMMISSIONERS, Respondent.

(199 N. W. 453.)

(File No. 5531. Opinion filed June 14, 1924.)

1. **Carriers — Railroads — Stoppage in Transit — Transportation — Stoppage in Transit held Not Privilege, to Be Granted or Withheld at Will of Carrier.**

   Stoppage in transit, which is enumerated in Interstate Commerce Act, Sec. 1, as amended by Act June 29, 1906, and subsequent amendments (U. S. Comp. St., Sec. 8563 et seq.), as one of the regular services included in term "transportation," held not a privilege, to be granted or withheld at will of carrier.

2. **Carriers—Railroad Commission—Privilege of Transit—State Railroad Commission Held Empowered to Require Carriers to Establish Right of Transit on Intrastate Freight Shipments; "Privilege of Transit."**

State Railroad Commission held empowered, under Rev. Code 1919, Sec. 9509, to make an order requiring railroad companies doing business in the state to establish a right of transit on intrastate freight shipments throughout the state, where the extension of that right to interstate shippers and its denial to intrastate shippers would work discrimination against the latter; "privilege of transit" meaning right of shipper to have car stopped at some intermediate point, commodity shipped unloaded and treated or changed into some other form, and then reloaded and shipped to its destination as though it had been continuous shipment and at same rate as originally billed.

3. Carriers — Constitutional Law—Intrastate Shipments — Railroad Commission's Order, Establishing Right of Stoppage in Transit as to Intrastate Shipments, Held Not Violation of Constitutional Rights.

Order of Railroad Commission, establishing right of stoppage in transit as to intrastate freight shipments, held not to interfere with petitioner's management of its railroad, or with its constitutional rights.

4. Carriers—Rates—If Rate Insufficient to Compensate for Service of Stoppage in Transit, Increase in Rate Is Remedy.

If the rate in force is not sufficient to compensate railroad company for service of stoppage in transit as to intrastate shipments, remedy is an increase in rate, rather than denial of the service.

5. Carriers—Railroad Commission—Certiorari—Adjustment of Rates for Service of Stoppage in Transit Question for Railroad Commission.

Matter of adjustment of rates for service of stoppage in transit is a question for the Railroad Commission.

Certiorari proceeding by the Chicago, Milwaukee & St. Paul Railway Company to review an order of the Board of Railroad Commissioners. Order affirmed.

E. L. Grantham, of Aberdeen, and C. R. Sutherland, O. W. Dynes, and J. N. Davis, all of Chicago, Ill. (H. H. Field, of Chicago, Ill., of counsel), for Petitioner.

Buell F. Jones, Attorney General, and Raymond L. Dillman, Assistant Attorney General, for Respondent.

Appellant cited: Plano Milling Co. v. St. L. S. W. Ry. Co., 22 I. C. C. 360; Young v. L. & N. R. Co., 22 I. C. C. 1, 3; Empire Coke Co. v. B. & S. R. Co., 31 I. C. C. 573, 577; Spiegle Co. v. Southern Ry. Co., 19 I. C. C. 522; Crews v. Richmond & D. R.

Co., 59 Fla. 612, 52 So. 4; Southern Ry Co. v. St. Louis Hay & Grain Co., 214 U. S. 297; Diamond Mills v. B. & M. R. R. Co., 9 I. C. C. 311; S. P. R. Co. v. Interstate Commerce Commission, 219 U. S. 433; Southern Ry. Co. v. St. Louis Hay & Grain Co., 214 U. S. 297; Southern Illinois Millers' Assn. v. L. & N. R. R. Co. et al, 23 I. C. C. 672; L. S. & M. S. Ry. v. Smith, 173 U. S. 684; Central R. R. Co. v. U. S., 257 U. S. 247; In re Alleged Unlawful Rates and Practices, 7 I. C. C. 240; Transit Case, 24 I. C. C. 340.

Respondent cited: 1 Watkins on Shippers and Carriers, 3rd ed., 470; Central Railroad Co. v. United States, 42 S. Ct. R. 80; State v. Atlantic Coast Line Railway Co. (Fla.), 52 So. 4; John Morrell & Co. v. American Express Co., 45 S. D. 399, 197 N. W. 524.

POLLEY, J. This matter is before the court upon a writ of certiorari to review an order made by the Board of Railroad Commissioners, ordering the various railway companies doing business in this state to establish the right of "transit" on intrastate freight shipments throughout the state. The order complained of was made after a hearing, at which all the railway companies doing business in the state were given an opportunity to be heard, and applies equally to all said railway companies. But this petitioner, the Chicago, Mlwaukee & St. Paul Railway Company, alone and on its own behalf only, instituted this proceeding.

By "transit," or the privilege of transit, as used in this proceeding, is meant that a shipper may load a car with some commodity, as grain, for instance, at a point on a railroad, billed to some other point, but with the privilege on the part of the shipper to have the car stopped at some intermediate point, the grain unloaded and cleaned, or ground or changed into some other form, and then reloaded and shipped on to its destination, as though it had been a continuous shipment, and at the same rate as originally billed. The privilege had been extended by petitioner to interstate traffic, prior to the making of the order complained of, but refused as to intrastate traffic. Intrastate shippers claim that to deny this privilege to them, while extending it to interstate shippers, works a discrimination against them, to their prejudice, and in favor of the interstate shippers. This can be better understood from an illustration shown in the testimony taken at the hearing:

A carload of wheat, shipped from Mobridge to Sioux City, may be unloaded and ground at Aberdeen, and the product then shipped to destination on the through rate, which is 26 cents per 100 pounds; but, if the same car of grain is billed from Mobridge to Yankton, but unloaded and ground at Aberdeen, then reshipped to Yankton, it must pay the local rate to Aberdeen on the grain and the local rate on the product from there to Yankton, amounting to 39 cents per 100 pounds, or 12½ cents per 100 pounds more to Yankton than to Sioux City, although the distance is 62 miles less.

Apparently this works a hardship on the intrastate shippers; but petitioner, while not denying that the interstate shipper is given an advantage over the intrastate shipper, contends that this fact is not pertinent to the issue involved, and this for two reasons: First, that stoppage in transit is only a privilege, that may be extended to or withheld from a shipper at the will of the carrier; and, second, that the commission has no jurisdiction over, or right to interfere with, interstate traffic in any manner whatever, and therefore cannot use it for purposes of comparison, or as a basis for regulating intrastate traffic.

[1] We do not agree with either of these propositions. The time was, and not so long ago, when stoppage in transit may have been only a privilege, to be granted or withheld at the will of the carrier, but as transportation increased, and became more complicated, stoppage in transit began to be regarded more as a matter of right to the shipper than a mere privilege, and is enumerated as one of the regular services included in the term "transportation" in section 1 of the Interstate Commerce Act, as amended by Act Cong. June 29, 1906, and subsequent amendments (U. S. Comp. St. § 8563 et seq.), and had been in general practice in shipments of a very large number of commodities that are transported by the railroads in large bulk. In the "Transit Case," 24 I. C. C. R. 340, the commissioners say:

"Today transit has become a practice of such universal prevalence upon all the railroads that it has become as much the duty of this Commission, under the law as amended, to supervise and regulate these rules and practices generally of all interstate carriers. It may be that absolute uniformity throughout the country in transit rules and regulations cannot be brought about, but there

can be established such uniformity as to insure that traffic will be conducted in accordance with the plain provisions of the law. In other words, there must be uniform observance of the law, and all the interests will then be upon a basis of equal opportunity, and abuses that are now justly complained of can be prevented. * * * Indeed, we recognize that in most instances transit is now a commercial necessity, because of its almost universal application, and on account of the development which certain lines of buisness have taken, entailing heavy investments."

In the face of this declaration it can hardly be maintained that stoppage in transit is only a privilege, to be granted or withheld at the will of the carrier.

[2] Upon the second proposition the case is not so clear. We have no statute like the federal statute, which makes transit one of the services included in transportation, nor have we any statute giving the Railroad Commission express power to compel the railroad companies to extend this service to shippers as a matter of right, and had the railroad companies not already extended this privilege, whether voluntarily or not is not material, to one class of shippers, it is very doubtful if the commission has the power in the first instance to compel the carriers to grant this service. But the commission has the power to correct abuses and remove discriminations, and that the practice complained of by the intrastate shippers amounts to a discrimination is to us too plain to admit of any doubt whatever. In effect, it is not at all different from the old practice of granting rebates by the railway companies, that was in vogue prior to the enactment of the Interstate Commerce Act, whereby the railway companies enriched or destroyed competitive shippers at will. For the purpose of removing existing discriminations, the Railroad Commission has the power under the law to make the order complained of. Section 9509, R. C. 1919; Oklahoma Millers Association v. A., T. & S. F. Ry. Co., P. U. R. 1915A, 885.

That the commission has this power is admitted by petitioner's argument. Petitioner contends that:

"Stopping of a commodity in transit for the purpose of treatment or reconsignment is in the nature of a special privilege, which the carrier may concede, but which the shipper cannot demand as a matter of right, and, so long as discrimination is not

created, a carrier has the legal right to determine its policy, as to whether or not it will grant the privilege."

But the petitioner has already established the policy by extending the privilege to interstate shippers, and this, as we have seen, works a discrimination to the detriment of intrastate shippers.

[3] Petitioner contends that, by extending the right of stoppage in transit to intrastate shippers, the Railroad Commission has placed an undue burden on interstate traffic, and violated the interstate commerce clause of the Constitution of the United States; that it takes private property for public use without due process of law; that it compels petitioner to perform additional service without compensation, and is therefore confiscatory; and that said order is not warranted by the facts. Each of these contentions has been given careful consideration, but we fail to find any foundation for either of them. We cannot see how under the circumstances shown by this record, the order complained of in any manner interferes with petitioner's management of its railroad, or with its constitutional rights.

[4] We are aware, of course that the stoppage in transit and reshipment of freight necessitates additional labor and additional expense on the part of the petitioner, and, if the rate already in force is not sufficient to compensate it for this service, then the remedy is an increase in rate, rather than a denial of the service; but petitioner is not here asking for a correction of the rate now in force, but for an absolute denial of the service.

[5] The matter of adjustment of rates is a question for the consideration of the Railroad Commission, and this matter was taken into consideration by that body when the order complained of was made.

The order reviewed is affirmed.

DILLON, J., not sitting.

Note.—Reported in 199 N. W. 453. See, Headnote (1), American Key-Numbered Digest, Carriers, Key-No. 74, 10 C. J. Sec. 320 (1925 Anno.); (2) Carriers, Key-No. 13(1), 10 C. J. Sec. 748; (3) Carriers, Key-No. 10, 10 C. J. Sec. 320; (4) Carriers, Key-No. 12(1), 10 C. J. Sec. 632; (5) Carriers, Key-No. 12(1), 10 C. J. Sec. 630.