CHICAGO & NORTH WESTERN RAILWAY COMPANY et al, Petitioners, v. MURPHY et al, Respondents.

(209 N. W. 353.)

File No. 5446.   Opinion filed June 19, 1926.)

1.   Quo Warranto—Corporations—Board of Railroad Commissioners Lacks Jurisdiction to Declare Amendment to Railroad Charter Void, since Charter Can Only Be Annulled by Quo Warranto (Rev. Code 1919, § 239, and sections 2781-2783, as amended by Laws 1919, c. 289, §§ 1-3).

    Where railroad charter was amended by changing line of road, Board of Railroad Commissioners cannot declare amendment void upon a collateral attack and order compliance with original charter, since, under Rev. Code 1919, § 239, and sections 2781-2783, as amended by Laws 1919, c. 289, §§ 1-3, corporate charter can only be annulled by proceeding in nature of quo warranto.

2.   Railroads—Order of Board of Railroad Commissioners to Compel Construction of Spur Cannot Be Validly Made Merely upon Erroneous Conclusion That Charter Required Such Construction.

    Assuming that Board of Railroad Commissioners may, when public necessity and convenience demand, compel railroad to construct a spur, not within its charter provisions, such an order must be made upon different considerations of public convenience than mere erroneous conclusion that road's charter required construction of spur.

Note.—See, Headnote **(1)**, American Key-Numbered Digest, Quo Warranto, Key-No. 5, 32 Cyc. 1415, Railroads, 33 Cyc. 82; **(2)** Railroads, Key-No. 225, 33 Cyc. 658 (Anno).

Certiorari by the Chicago & North Western Railway Company and another to J. J. Murphy and others, constituting the Board of Railroad Commissioners, and another, to review an order of the Railroad Commission in a cause against petitioner upon the complaint of the Town of Newell and its citizens.  Order set aside and vacated.

*A. K. Gardner,* of Huron, for Petitioners.

*Buell F. Jones,* Attorney General, and *Raymond L. Dillman,* Assistant Attorney General, for Respondents

BURCH, C.  This cause is before us upon certiorari to the Board of Railway Commissioners of South Dakota.  The cause was before the Railroad Commission upon the complaint of the town of Newell and its citizens, against the Chicago & North Western Railway Company, owning and operating the Belle Fourche Valley Railway Company, to require it to extend its line into Newell and establish therein a depot and other station facilities.

The Belle Fourche Valley Railway Company was organized under the laws of South Dakota to construct a short line of railroad starting at Belle Fourche and running easterly to a point at or near the government town site of Newell.  At that time Newell was not established as a town, but certain land had been reserved for town-site purposes.  The territory through which the railroad would build and in which the town site was located was a government irrigation project then in charge of the United States Reclamation bureau.  The original articles of incorporation of the railway company were amended so as to extend the east terminus of the line, from a point at or near Newell, through Newell to a point 63 miles east.  After this amendment, the railway company applied for a right of way through the town site, but this was denied by the Commissioner of the General Land Office, and the railway company appealed to the Secretary of the Interior.  Pending the appeal, the railroad was being constructed, and, when the construction was nearing Newell town site, and the appeal not decided, the railway company filed a second amendment of their charter so that the line, instead of running through Newell, would

run about a half mile south of the south line of the town site. Along this new line under the second amendment the road was built to within a half mile of the town site, where a depot and other station facilities were placed, and further construction of the road ceased. The railroad was built and depot established where it now is before the town was settled and built up. The reclamation service advertised the project, showing by maps the location of the railroad along the line of the first amendment, through the town site of Newell, and the railroad company paid the cost of some of the advertising. During the proceedings before the commission, the railway company procured a writ of prohibition from the circuit court of Beadle county restraining the commission from further proceeding in the matter, on the ground that the commission was without jurisdiction. On appeal to this court, the circuit court was reversed. Railway Co. v. Dougherty, 39 S. D. 147, 163 N. W. 715.

In the Dougherty Case, above cited, the railroad company contended that the purpose of the complaint and proceedings before the commissioners was to compel the company to build the road into Newell because of representations made by the company in such advertising showing its purpose to build into the town site, which misled complainants to their injury, and that for that reason the railway company should now be compelled to comply with such representations. This court did not, however, accept this construction of the purpose of the complaint, but said:

"It is apparent, we think, that the existence of the charter provision and the resolution amendatory thereof were facts upon which petitioners founded the claim that the company should be required to extend its line through the town site of Newell, and that the alleged acts of the company through its officers and agents in advertising to the public by circulars, maps, plats, and other advertising matter that its actual line of railway and its station house were to be located in the center of the business portion of said town evidenced the purpose and intent of the charter provisions, and created a duty and obligation on the part of the company to construct its line into and through the town site."

The court then cited and reviewed a number of cases to the effect that, where a corporation makes use of the power with

which it is vested by its charter, a contractual relation arises, and
the conditions imposed in behalf of the public become duties to
be observed, which may be enforced by proper authority. The
court concluded that the Railway Commission has power to take
steps when, in the judgment of such board, "it shall appear that
any common carrier fails in any respect to comply with the terms
of its charter or the laws of the state," and the commission could
not be restrained by writ of prohibition from proceeding to a
hearing and determination of the complaint then before it. After
the proceeding in prohibition was disposed of (which we refer to
as the Dougherty Case), the commission completed its hearings
and ordered the railroad company to build its road into Newell
along the line designated in its first amendment to its original
articles of incorporation. The jurisdiction and power of the com-
mission to make and enforce this order is questioned in this pro-
ceeding in certiorari.

In this case, the question is not the jurisdiction of the board
to entertain the proceeding, but the jurisdiction of the board to
make the order which it made, as the result of the hearing.

[1] It is plain from the report of the commission that the
commission had in mind the Dougherty Case, and proceeded upon
the theory that it could compel compliance with charter require-
ments. But in doing so the board does not take the charter as
it finds it and order the railway company to perform its duties
thereunder. It attacks the charter, declares the second amendment
void, and the first amendment valid, and orders a compliance with
the terms of the charter as it existed under the first amendment.
The railway company challenges the jurisdiction and power of the
commission to thus declare its amended charter void upon a col-
lateral attack at the instance of a private party. Section 239, R.
C. 1919, provides:

"The due incorporation of any company claiming in good
faith to be a corporation under the laws of this state and doing
business as such, or its right to exercise corporate powers, shall
not be inquired into collaterally, in any private suit to which such
de facto corporation may be a party; but such inquiry may be
had and action brought, at the suit of the state, in the manner
prescribed in title 2 of this Code."

[2]    Title 2 is the Code of Civil Procedure, and sections 2781 to 2783 as amended by chapter 289, Laws 1919, provide the appropriate remedy by a proceeding in the nature of quo warranto.    We are satisfied the validity of the railway company's amended charter may not be assailed before the commission. If its charter is to be annulled, it must be in a direct action by a court clothed with jurisdiction to hear and determine proceedings in quo warranto.    In so far as such order depends upon the finding and conclusion that the amended charter is invalid, it cannot be sustained.    We must therefore determine the extent to which the order depends upon the conclusion that the amended charter was void.    Assuming without deciding that the commission may, when public necessity and convenience demand, compel the railway company to construct a spur, not within its charter provisions, and although to comply therewith the company may have to exercise the right of eminent domain and make additional investment, it would seem that such order must be made upon very different considerations of public convenience than where made to compel the performance of a charter obligation.    In the Dougherty Case this court quoted from Leverett et al v. M. G. A. Ry. Co., 96 Ga. 385, 24 S. E. 154, wherein it was said:

"Those persons who have invested money upon the faith of this contract between the railroad company and the state are entitled to have that contract performed.    They are entitled to have the railway company comply with the terms of its charter in this respect, not because of any public inconvenience which might necessarily result from its breach, but because in their own estates they suffer a special, particular damage in which the public in no manner participate.    The threatened injury, if permitted, would result in irreparable damage to them and their property; and it can never be allowed that, under such circumstances, a railroad company can be permitted to violate its charter to the injury of the citizen, and leave him without redress."

The report of the Railroad Commission indicates that the commission was actuated by considerations of convenience to the citizens of Newell, belonging to them under the railroad company's charter obligation.    There is nothing in the report to indicate the board felt the public necessity was such as to require the more drastic order imposing burdens upon the road not contem-

plated by the terms of its charter, made necessary by changed traffic conditions not foreseen when the charter was granted. The order appears to have wholly depended upon the conclusion that the charter required the road to build into Newell.

For the foregoing reasons, the said order of the Railroad Commission is set aside and vacated.