Purporting to act pursuant to the provisions of section 9773, R.C. 1919, as superceded by chapter 251, § 4, Laws 1923, amended by chapter 261, Laws 1925, defendant Board of Railroad Commissioners held a hearing and made and entered an order fixing the sum of $40 per annum as a reasonable rental to be paid to plaintiff by the Plankinton Cooperative Elevator Company for an elevator site on plaintiff's right of way in the town of Plankinton in Aurora county, S.D. Plaintiff applied to the board for rehearing pursuant to section 9590, R.C. 1919, as amended by section 1, c. 81, Laws 2d Sp. Sess. 1920, and such application being denied, plaintiff within 30 days thereafter applied to this court pursuant to section 9591, R.C. 1919, as amended by section 2, c. 81, Laws 2d Sp. Sess. 1920, for certiorari to review the order of the defendant commission.
The writ issued, defendant board has interposed a motion to quash attacking the jurisdiction of this court, and the matter is now before us for disposition upon such motion.
In support thereof defendant maintains that the only method open to plaintiff for reviewing this particular order of the board was by appeal to the circuit court. To understand this contention it is necessary somewhat to review relevant legislation. The statute *Page 300 
by virtue of which the board purported to fix the rental value of the elevator site here in question appears to have originated as chapter 232, Laws 1909, which was re-enacted with some modifications by chapter 261, Laws 1911. Both of these statutes were specifically repealed and a new law relating to the subject-matter was enacted by chapter 297, Laws 1913. All threee of these statutes provided, with reference to this particular matter, for an appeal to the circuit court; the relevant provisions of the 1913 law being sections 2, 3, and 4 thereof, reading as follows:
"Section 2. Either party to such controversy shall have the right to appeal from the decision made by the Board of Railroad Commissioners to the circuit court of the county in which the proposed site is located. The appeal shall be taken by serving a notice of appeal in writing upon the adverse party and upon the secretary of the Board of Railroad Commissioners and filing the original notice of appeal, with proof of such service, with the clerk of the circuit court of said county within thirty (30) days from the date of the decision from which the appeal is taken. The notice of appeal shall state the names of the parties, the date of the order or decision appealed from, and designate in plain and concise language whether the appeal is from the whole or a part of the decision, and if from a part, shall indicate plainly that part from which the appeal is taken. Within fifteen (15) days after the service of the notice of appeal, the secretary of the Board of Railroad Commissioners shall make and file with the clerk of the circuit court of the county a certified copy of the evidence taken before the Board, as well as the findings and order appealed from.
"Section 3. At the next term of the circuit court of said county, unless continued for good cause shown, and without any further pleadings, the question of the fair annual rental value of such warehouse, coal shed or other building site shall be submitted to a jury for determination, and judgment shall be entered upon the verdict by the court. In such action the certified copy of the record sent up by the secretary of the Board of Railroad Commissioners and of the findings and order appealed from shall be admissible as evidence.
"Section 4. Unless an appeal from the decision of the Board of Railroad Commissioners be taken within the time mentioned in Section 2, the decision of the Board shall be final." *Page 301 
There was not in this state at the time of the passage of any of the three acts last above mentioned any comprehensive provision of law for appeal in all cases from the orders of the board to the circuit court. The same session of the Legislature, however, which had enacted chapter 297, Laws 1913, passed later in the session a statute of broader application (chapter 312, Laws 1913), establishing in general terms the procedure for the trial of matters before the board, prescribing the method of keeping and making up the record thereon, and providing and fixing procedure for an appeal to the circuit court from "any final order or determination of the board." Under this general statute, appeal was required to be taken within 60 days, and the method of taking it was somewhat different from that prescribed by chapter 297, Laws 1913, with reference to the special case there dealt with. At the close of the 1913 legislative session, we had then this situation; First, a general statute (chapter 312, Laws 1913) providing for and regulating the procedure on appeals from "any final order or determination" of the board; second, a special statute (chapter 297, Laws 1913) authorizing the board to fix rental value of warehouse and other sites, but requiring an appeal from its orders with reference to such matters to be taken in a lesser time and in a somewhat different manner from the procedure of general application established by chapter 312. This status continued unchanged until the adoption of the Revised Code of 1919.
When the revisers came to prepare chapters 297 and 312, Laws 1913, for insertion in the Code, this is what they did: They placed the provisions of chapter 312 (relating generally to trials and records before the board and appeals therefrom) in the Code without substantial change as sections 9587-9597 thereof, constituting article 3 of chapter 1 of part 20 of title 6 of the Code. When they came to deal with chapter 297, relating to the matter of warehouse sites, they placed section 1 of the act (purporting to authorize the board to fix rentals in case of dispute) in the Code without any substantial change as section 9773. The provisions of sections 2, 3, and 4 of the act (hereinbefore quoted and relating to appeals from these particular orders) they consolidated into one section and placed in the Code as section 9774, which reads as follows: "Either party to such controversy shall have the right to appeal from any *Page 302 
such decision of the board of railroad commissioners to the circuit court of the county in which the purposed site is located, such appeal to be taken as provided in article 3, chapter 1, of this part; provided, that the question of the fair annual rental value of such warehouse, coalshed or other building site shall be submitted to a jury for determination, and judgment shall be entered upon the verdict by the court. Unless an appeal from the decision of the board of railroad commissioners be so taken, the decision of the board shall be final."
In this form the 1919 Code was adopted by the Legislature. It will be seen that the Code abrogated the special provisions of chapter 297, Laws 1913, relating to appeals from these rental orders, and put such appeals upon the same basis as appeals in general from final orders of the board pursuant to the provisions originating as chapter 312, Laws 1913, which had become in the Code article 3 of chapter 1 of the same part and title which included sections 9773 and 9774.
The next legislative step in the matter was the enactment of chapter 290, Laws 1919, which purported to amend sections 9590-9593, R.C. 1919; the general effect of the amendment being to do away with appeals from orders of the board to the circuit court and to provide that such appeals should lie directly to the Supreme Court. This statute was held unconstitutional and beyond the legislative power by Winner Milling Co. v. Chicago N.W.R. Co. (1921) 43 S.D. 574, 181 N.W. 195. But before that decision was handed down (January 29, 1921), the matter had again received the attention of the Legislature by chapter 81, Laws 2d Sp. Sess. 1920 (approved June 30, 1920). By this statute, sections 9590-9596, R.C. 1919, were once more amended. This second amendatory act likewise abrogated the provisions for appeal to the circuit court and provided, in substance, that a party affected by any final order of the board should first apply to the board for a rehearing, and if the same was denied such party might within 30 days apply to the Supreme Court for a writ of certiorari. The act also undertook to limit the powers of this court in hearing upon the writ, and further specifically provided by section 6 (amending section 9595, R.C. 1919) as follows: "No court of this state, except the supreme court, to the extent specified in this act, shall *Page 303 
have jurisdiction to review, reverse, correct or annul any order or decision of the board of railroad commissioners, or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the board in the performance of its official duties; provided, that the writ of mandamus shall lie from the supreme court to the board in all proper cases."
It is by virtue of the provisions of chapter 81, Laws 2d Sp. Sess. 1920, that plaintiff in the instant matter claims the right to proceed as it is proceeding.
It is to be noted that section 9774, R.C. 1919, above quoted, provides for an appeal "to the circuit court * * * to be taken as provided in article 3, chapter 1, of this part." At the time of the enactment of the Code, "article 3, chapter 1, of this part" likewise provided for appeals to the circuit court, and not elsewhere. By subsequent amendment, as above outlined, "article 3, chapter 1, of this part" no longer provides for appeals to the circuit court, but does purport to provide for certiorari out of this court, and purports to make such certiorari from this court the sole method of reviewing any order or decision of the board, and specifically states, as above quoted, that no other court of this state shall have any jurisdiction to review, reverse, correct, or annul "any order or decision of the board of railroad commissioners." Upon this state of the statute law defendant board contends, in support of its motion to quash (if we apprehend the argument correctly) that, since there has been no specific amendment of section 9774, and since the words "appeal * * * to the circuit court" still appear therein (as does also the language with reference to submission of the question to and its determination by a jury), appeals from the orders contemplated by section 9773 are in nowise affected by the 1920 amendment of "article 3, chapter 1, of this part," and that review of such orders should not be sought by certiorari out of the Supreme Court pursuant to the 1920 law, but should still be had (and arguendo can only be had) by appeal to the circuit court, presumably in accordance with the procedure set forth in "article 3, chapter 1, of this part," as originally enacted in the 1919 Code.
[1, 2] In the light of the legislative history and in view of the language of the various relevant statutes as above set out, we *Page 304 
find ourselves entirely unable to agree with this theory of defendant board. The 1919 Code was enacted as a single body of law, and all its provisions must be construed together. By changing the language of sections 2, 3, and 4, c. 297, Laws 1913, to the language found in section 9774, R.C. 1919, an intention was clearly exhibited to make decisions of the board in these rental cases reviewable in the same manner and form as were orders of the board generally. When the method of reviewing orders of the board in general was attempted to be changed by chapter 81, Laws Sp. Sess. 1920, we think it was undoubtedly the legislative intent that such change should apply to all orders of the board without any exception whatsoever. This seems particularly true in view of the express language of section 6 of chapter 81, hereinbefore quoted. We are therefore of the opinion that the enactment of said chapter 81 necessarily repealed by implication so much of section 9774, R.C. 1919, as appears to contemplate an appeal to the circuit court from orders of the board made under the authority of section 9773.
[3] Inasmuch as defendant board has seen fit to raise the point of jurisdiction in this proceeding, however, we think we may profitably pursue it somewhat further. Of course we can always do this of our own motion and indeed should, if we perceive any jurisdictional question, even though the parties have suggested none. Winner Milling Co. v. Chicago N.W.R. Co. supra; National Casing Co. v. Schmechel (1921) 44 S.D. 101, 182 N.W. 526; Downs v. Bruce School Dist. (1927) 52 S.D. 168, 216 N.W. 949.
As hereinbefore outlined, the method of review of orders of the board up to 1919 was by appeal to the circuit court. By chapter 290, Laws 1919, appeal to the circuit court was abolished, and it was unsuccessfully attempted to make an appeal to this court the sole method of reviewing such orders. A little over a year later, by chapter 81, Laws 2d Sp. Sess. 1920, it was attempted to do away with all appeals to any court and to make certiorari out of this court the exclusive means of reviewing such orders or exercising any degree of judicial control over the acts of the Board of Railroad Commissioners, save only for mandamus out of this court in proper cases. Section 9595, R.C. 1919, as amended by section 6, c. 81, Laws 2d Sp. Sess. 1920. *Page 305 
For the purposes of this opinion, we may assume that it was within the legislative power to abolish appeals from orders of the board to the circuit court. Also, we may pass, without deciding, the question of whether or not the constitutional rights of parties appearing before the board are adequately protected if the only method provided for controlling or reviewing the orders of said board is certiorari out of some court; and it is unnecessary for us in this opinion to discuss or determine the question of how far, if at all, the Legislature can control the functioning of the courts in certiorari, and how far, if at all, the Legislature can make findings and conclusions of the Board of Railroad Commissioners on questions of fact binding on the courts and immune from judicial review, a point which was suggested but not discussed or determined in Murphy v. Standard Oil Co. (1926) 49 S.D. 197, 207 N.W. 92.
Since the effective date of chapter 81, Laws 2d Spec. Sess. 1920, this court has issued certiorari to the board in at least the following cases: City of Mitchell v. Board of Railroad Com'rs (1921) 44 S.D. 430, 184 N.W. 246; Chicago, M. St. P.R. Co. v. Board (1924) 47 S.D. 395, 199 N.W. 453; Murphy v. Standard Oil Co., supra; Chicago N.W.R. Co. v. Murphy (1926) 50 S.D. 221, 209 N.W. 353; Wegner v. Murphy (1926) 50 S.D. 583; 210 N.W. 986; Griffin v. Murphy (1927) 51 S.D. 50, 211 N.W. 804; Southwest, etc., Telephone Co. v. Dakota Central Telephone Co. (1928)53 S.D. 121, 220 N.W. 475; In re Sioux Falls Traction System (1929)56 S.D. 207, 228 N.W. 179; Vander Werf v. Board of Railroad Com'rs (1931) 58 S.D. 586, 237 N.W. 909. In none of these cases, however, was any question raised as to jurisdiction, nor did this court undertake to discuss or determine its jurisdiction or the nature thereof.
[4-8] We do not question the power of the Legislature under section 3, article 5, Const. S.D., to authorize this court to issue certiorari to the board, as was specifically done by chapter 81, Laws 2d Sp. Sess. 1920. Indeed, as a matter of fact, we think this court already had such power under the provisions of section 2996, R.C. 1919. The Board of Railroad Commissioners, however, is not a court, and the Legislature cannot make it a court so long as the Constitution of this state provides (section 1, art. 5): "The judicial *Page 306 
powers of the state, except as in this constitution otherwise provided, shall be vested in a supreme court, circuit courts, county courts, and justices of the peace, and such other courts as may be created by law for cities and incorporated towns."
The appellate jurisdiction of this court is limited, as pointed out in Winner Milling Co. v. Chicago N.W.R. Co., supra, 43 S.D. 574, 181 N.W. 195 (1921) to appeals from the inferior courts mentioned in the section of the Constitution last above quoted. Any other jurisdiction of this court is original, as distinguished from appellate. It is the established law of this state, and has been since statehood, that no person is entitled to invoke the original jurisdiction of the Supreme Court as a matter of absolute right, but that such original jurisdiction is to be exercised in the discretion of the court, and not otherwise. Everitt v. Board of Com'rs (1890) 1 S.D. 365, 47 N.W. 296; State ex rel. Dakota Central Telephone Co. v. City of Huron (1909) 23 S.D. 153, 120 N.W. 1008; Stanley County v. Jackson County (1915) 36 S.D. 350, 154 N.W. 806; Brandon Sav. Bank v. Swanson (1928) 54 S.D. 95, 222 N.W. 660. The principles which will guide this court in the exercise of such discretion are referred to and prior cases to the point cited in State ex rel. Botkin v. Welsh (1933) 61 S.D. 593 at page 596, 251 N.W. 189. The Legislature cannot require action by this court and make such action the sole means or manner of reviewing orders of the board by specifying certiorari as the method any more than it could by specifying appeal as the method, as was unsuccessfully attempted by chapter 290, Laws 1919. And since the issuance of certiorari out of this court is in all cases discretionary with the court, it might well be doubted whether the constitutional rights of parties before the board might not be violated if their only recourse for any judicial review of the orders of such board was certiorari under the original jurisdiction of the Supreme Court; a situation which was undoubtedly attempted to be created by chapter 81, Laws 2d Sp. Sess. 1920.
[9] We are of the opinion, however, that the Legislature could not constitutionally accomplish what it attempted to accomplish by the statute last mentioned. The vital portions of the statute, as to the point now under consideration, are sections 2, 4 and 6, amending R.C. 1919, sections 9591, 9593, and 9595, respectively. *Page 307 
It is apparent from inspection that these sections contain practically verbatim the language of section 67 of the California Public Utilities Act (Chapter 14, First Extra Session California 1911, p. 55), and undoubtedly they were taken either from that statute or from some other statute which copied it in substance. This statute has been upheld in California. See Pacific Telephone Co. v. Eshleman (1913) 166 Cal. 640, 137 P. 1119, 50 L.R.A. (N.S.) 652, Ann. Cas. 1915C, 822; Clemmons v. Railroad Commission (1916) 173 Cal. 254, 159 P. 713. The difference between the California situation and our own, however, is vast. In California the Railroad Commission is created and established not by statute, but by the Constitution. By amendment to that Constitution in 1911 (section 22, art. 12), numerous powers were conferred upon the Railroad Commission, and it was further provided as follows: "No provision in this Constitution shall be construed as a limitation upon the authority of the legislature to confer upon the railroad commission additional powers of the same kind or different from those conferred herein which are not inconsistent with the powers conferred upon the railroad commission in this Constitution, and the authority of the legislature to confer such additional powers is expressly declared to be plenary and unlimited by any provision of this Constitution."
By virtue of this specific constitutional provision (but very distinctly not otherwise) the California courts, in the cases above cited, held (and it would seem rightly) that the authority of the Legislature to confer power upon the Railroad Commission was just exactly what the constitutional amendment said it was, to wit, "plenary and unlimited by any provision of this Constitution." Under that constitutional amendment the California courts held, as stated in the Clemmons Case, that the Legislature might, if it saw fit, extend utter and absolute power to the Railroad Commission and withhold from the courts any and all power whatsoever of reviewing or controlling its acts, without infringing upon the State Constitution of California.
With us the situation is quite otherwise. We have, of course, no constitutional provision comparable to that which is invoked in California to support this legislation. The Board of Railroad Commissioners of this state is a creature solely of statute. It is an *Page 308 
administrative board and the Legislature can neither make it anything else, nor vest it with judicial powers. Undoubtedly, the sovereign people of this state could so do by constitutional amendment (always within the limits of the Federal Constitution) if they saw fit (as they did in substance in California), but thus far they have not. The Board of Railroad Commissioners of this state is, in our opinion, a board or tribunal within the language of section 2996, R.C. 1919, and always has been, and as such has been always (and, at least so far as the circuit courts are concerned, must continue, until there is a change in our Constitution) amenable to certiorari and other writs out of the Supreme and circuit courts of this state.
Section 14 of article 5 of the Constitution of this state, referring to the circuit courts, provides: "They and the judges thereof shall also have jurisdiction and power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, injunction and other original and remedial writs with authority to hear and determine the same."
By this language the power of the circuit courts to issue remedial writs and hear and determine the same in all cases according to the practice of our law as it existed at the date of the adoption of the Constitution was embedded in the Constitution, and such power, authority, and jurisdiction of the circuit courts is not subject to be impaired, diminished, or destroyed by the Legislature. That it was the practice for the circuit (or district) courts to employ the writ of certiorari to review the acts of "inferior courts, officers, boards or tribunals" in proper cases at the time our Constitution was adopted is incontrovertible. See section 685, Code Civ. Proc. 1877; section 5507, Comp. Laws 1887. The statutory Board of Railroad Commissioners of this state is such a board or tribunal, and the Legislature cannot make it anything else unless and until our Constitution is changed; and the Legislature cannot deprive the circuit courts of this state of their constitutionally granted jurisdiction to issue their writs of certiorari and other remedial writs to such board. It follows that so much of chapter 81, Laws 2d Sp. Sess. 1920, as purports or attempts to forbid the circuit courts of this state from issuing their writs of certiorari or other remedial writs to the board is void and beyond *Page 309 
the constitutional power of the Legislature, as is likewise that portion of the act which purports to provide that the final orders or decisions of the board shall become absolute unless within 30 days application is made to the Supreme Court for writ of certiorari.
[10, 11] The net result of the situation is this: Certiorari may issue to the Board of Railroad Commissioners in proper case either out of this court or out of the circuit courts. Application to this court must be made within 30 days under the provisions of chapter 81, Laws 2d Sp. Sess. 1920. There is not in that act or elsewhere on our books any statute fixing any particular time within which applcation must be made to the circuit court. Our jurisdiction in the matter is original and to be exercised entirely in the discretion of this court. In the instant case we perceive no reason why plaintiff cannot, even at this date, secure certiorari from the circuit court. Upon the principles heretofore established with reference to the exercise of our original jurisdiction (see State ex rel. Botkin v. Welsh, supra, and cases there cited), we find no valid reason in this particular case for taking such jurisdiction. We think the matter should go first to the circuit court and come here, if at all, by appeal. We are therefore of the opinion that we improvidently issued the writ, and it will be quashed and the proceeding dismissed without prejudice, and without costs.
All the Judges concur.